[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 462 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 463 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 464 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 465 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 466 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 467 
Doyle Lee Hamm appeals from the order of the Circuit Court of Cullman County denying his postconviction petition for relief. Hamm was charged with the January 24, 1987, robbery-murder of Patrick Cunningham, a night desk clerk at a motel in Cullman, Alabama. § 13A-5-40(a)(2), Ala. Code 1975. Hamm was tried by a jury, and on September 27, 1987, he was convicted of robbery-murder. The jury recommended that the trial court impose a death sentence. On December 1, 1987, the trial court determined that the aggravating circumstances outweighed the mitigating circumstances, and sentenced Hamm to death. This Court affirmed the judgment and sentence on June 16, 1989. Hamm v. State,564 So.2d 453 (Ala.Crim.App. 1989). The Alabama Supreme Court affirmed the judgment of conviction and the death sentence. Exparte Hamm, 564 So.2d 469 (Ala. 1990). The United States Supreme Court denied certiorari review. Hamm v. Alabama, 498 U.S. 1008,111 S.Ct. 572, 112 L.Ed.2d 579 (1990).
Hamm filed a petition pursuant to Rule 32, Ala. R.Crim. P., on December 3, 1991. After numerous delays, a hearing was held on the petition on July 26, 1999.[1] On December 6, 1999, the circuit court denied the petition. This appeal follows.
 I.
Hamm first argues that this Court must remand this case for a Rule 32 hearing "with his own counsel," because the circuit court erroneously dismissed Hamm's pro bono counsel, Bernard Harcourt, and appointed new counsel, Pam Nail, to represent him at the hearing. The State contends that the circuit court acted within its discretion when it appointed a different attorney to represent Hamm, because Harcourt had written a letter to the court indicating that he had attempted, in vain, to locate "substitute counsel" to represent Hamm at the hearing, and he requested *Page 468 
the court's assistance. (C. 1895.)[2] The State also argues that the constitutional right to counsel does not guarantee the right to any particular counsel or to counsel of one's choice.
The circumstances giving rise to this issue are unusual, as is the issue itself. Our review of the record and the relevant legal principles convinces us that no reversible error occurred when the trial court "withdrew" Harcourt and appointed another attorney to represent Hamm at the Rule 32 hearing.
Bernard Harcourt filed a Rule 32 petition on Hamm's behalf on December 3, 1991. (C. 2080-2120.) On January 16, 1992, Harcourt filed a motion on Hamm's behalf requesting that he and Bryan Stevenson of the Capital Representation Resource Center be appointed to represent Hamm. (C. 2034-36.) It does not appear that the motion was ruled upon, but Harcourt was listed as counsel of record for Hamm (C. 1), and he continued to file documents on Hamm's behalf. During the next several years, the case progressed very slowly. (C. 5.) On March 9, 1998, the trial court scheduled a final hearing on the petition to be held on June 29, 1998.
On April 20, 1998, Harcourt sent a letter to the circuit judge, requesting the judge's assistance in "resolving" Hamm's case. Harcourt wrote:
 "Since I received notice of the hearing date of Monday, June 29th, I have tried to locate substitute counsel to replace me in my pro bono representation of Doyle Lee Hamm. As you can imagine, there are few lawyers that are willing to take these death penalty cases pro bono and, unfortunately, I have not yet located anyone to replace me.
 "I began looking for substitute counsel for a number of reasons. First of all, I will be out of the country on Monday, June 29th, the date of the hearing. . . . In addition, I have moved to Tucson, Arizona, where I accepted an appointment to the faculty at the law school, and now have two very small children (ages three and nine-months). This makes it very difficult for me to engage in the kind of trial litigation at long-distances that this out-of-state, across-the-country pro bono
representation entails. Moreover, my appointment at the University of Arizona is for an academic professorship (rather than a litigation position), and I am accordingly expected to be engaged in scholarship full-time, not litigation. For all of these reasons, as I am sure you an understand, I thought it best to try to locate substitute counsel. Thus far my efforts have been in vain."
(C. 1895.)
In this letter, Harcourt then stated that he believed that the case could be "resolved by agreement." Harcourt explained that Hamm could be transferred to Mississippi to serve a previously imposed sentence of life imprisonment without parole, and that Hamm would agree that, if he ever challenged the sentence in Mississippi, "he waives his right to appeal or challenge in anyway his sentence of death in Alabama." (C. 1895.) Harcourt requested the court's assistance in initiating discussions among the parties with regard to this possible "resolution" he described. Finally, he requested that the June 29 hearing be postponed while the parties discussed "the possibility of resolving the case by agreement." (C. 1890.)
Circuit Judge Don Hardeman appears to have interpreted Harcourt's letter indicating that, due to Harcourt's family status and his employment in Arizona, he would *Page 469 
no longer be able to represent Hamm, and that he had been unable to find an attorney willing to take over Hamm's representation. On May 1, 1998, Judge Hardeman wrote a letter to Harcourt, and stated that he had interpreted Harcourt's letter as a motion to withdraw and that he was permitted to withdraw as counsel for Hamm and was immediately relieved from any further action in the case. The court stated it would appoint new counsel for Hamm. (C. 1894.) On May 28, 1998, the court appointed Pamela Nail to represent Hamm and continued the Rule 32 hearing. (C. 6.)
On May 26, 1998, Harcourt sent a letter to Judge Hardeman, stating that he was "surprised" at the judge's letter permitting him to withdraw as counsel. He stated that he felt professionally responsible for the case and that he would like to be informed of any action in the case. He requested, "at the very least," to represent Hamm as cocounsel. (C. 1613.) The record does not indicate that the court responded to Harcourt's letter.
The case was scheduled for a hearing, but was continued twice on motions from Hamm. (C. 6.) The matter was set for a hearing on April 8, 1999. On March 24, 1999, Harcourt filed a pleading styled as a "Motion to Be Consulted and Notified About the Hearing in This Case and to Be Notified About all Other Action Taken in This Case and to Schedule the Hearing at a Time that Is Convenient for Counsel for Petitioner Doyle Lee Hamm." (C. 1883-85.) Harcourt stated that he had not heard from the court or from Nail that a hearing had been scheduled, but that Hamm had informed him of the upcoming hearing. Harcourt stated that he had not been asked if he could attend a hearing on the date scheduled and further said, "Undersigned counsel teaches on Wednesdays from 1:15 to 2:25 and from 3:30 to 5:30 p.m. and would have to cancel classes in order to attend the hearing." (C. 1884.) Harcourt then requested that he be "consulted and notified about the hearing" and that the hearing be rescheduled to a time that was mutually convenient for all of the attorneys in the case. (C. 1884.) On March 29, 1999, Nail wrote a letter to Harcourt in response to Harcourt's submission of March 24, 1999. She stated that, on December 11, 1998, when Judge Hardeman continued the hearing and reset it for April 8, 1999, she had informed Harcourt of the action. She further stated that "Judge Hardeman will not continue this matter as you are no longer listed as counsel for Mr. Hamm." (C. 1632.)
In a pleading dated April 7, 1999, Harcourt alleged that he had made plans to attend the hearing and present evidence on April 8, 1999, but that he was informed that the hearing had been rescheduled because of the illness of a witness. Harcourt requested that the court "reappoint" him to represent Hamm. (C. 1617-24.) On April 14, 1999, the trial court denied the motion Harcourt filed requesting that he be consulted and notified about action in the case and the motion requesting that he be reappointed to represent Hamm. (S.R.5-9.)[3] In that extensive order, the court detailed the history of the case and of the court's interactions with Harcourt. For example, the court stated that, in January 1996, when Harcourt informed the court of his change of address when he accepted a position in Massachusetts,
 "[T]he Court had a discussion with Mr. Harcourt about his ability to continue to represent Mr. Hamm from his new position *Page 470 
at Harvard University and gave him the opportunity to withdraw at that time. Mr. Harcourt declined saying that he would continue the representation at his own expense from long distance."
(S.R.6.)
The court said that, several months later when it attempted to schedule a hearing date, Harcourt could not be reached. The court stated that, in March 1998, it located Harcourt in Arizona and spoke with him by telephone. Harcourt apparently informed the court that he had not completed discovery or had any contact with the Attorney General's Office about this case. The court personally informed Harcourt that the Rule 32 hearing had been scheduled for June 29, 1998. In its April 14, 1999, order the court further stated, "Subsequently, by letter dated April 20, 1998 . . ., Mr. Harcourt informed the Court that he could no longer represent the defendant in this matter and was looking for substitute counsel." (S.R.7.) The court said it had "treated the letter as a motion to withdraw and granted the same." (S.R.8.) The order continued:
 "13) The hearing in this case was set for December 11, 1998, February 2, 1999, and April 8, 1999. This case was continued at least once because new counsel had not received documentation from Mr. Harcourt that he had agreed to forward to her, several months after her appointment.
 "14) The Court has had no further correspondence with Mr. Harcourt and to this Court's knowledge Mr. Harcourt has made no further attempt to represent Mr. Hamm in this matter since he left Alabama in late 1995. This Court has experienced nothing but frustration in dealing with Mr. Harcourt, and frankly would have served him with a show cause order of contempt if he had been physically within the jurisdiction of this Court in April 1998.
 "15) The Court finds that Mr. Harcourt has obstructed the orderly progress of this case, either intentionally or carelessly, and that said obstruction is not in Mr. Hamm's best interest. Mr. Hamm is entitled to have his case proceed through the Rule 32 process and the appeals process in an orderly manner, without interference from Mr. Harcourt."
(S.R.8-9.)
Harcourt filed an extensive motion for reconsideration (with accompanying attachments) of the court's denial of his request to represent Hamm. (C. 1403-1616.) The circuit court denied the motion for reconsideration. (C. 7.)
At the July 26, 1999, hearing on the petition, Hamm informed the court that he objected to proceeding without Harcourt. (R. 5.) Hamm acknowledged that he was aware that Harcourt was employed by the University of Arizona. The court stated:
 "Over a year ago [Harcourt] asked to be relieved from this case and that was granted. The Court then appointed Ms. Nail at that time. She is a very good competent attorney with many years [of] experience before this bench and the Court has complete faith in her abilities to represent your interests today."
(R. 6.) The hearing proceeded, and the parties presented their evidence.
Hamm now argues that he is entitled to another Rule 32 hearing because he was denied the counsel of his choice, in violation of his federal and state constitutional rights to counsel. The State contends that the right to the assistance of counsel does not carry with it an absolute right to counsel of one's choice. The State further argues that a defendant's right to counsel must be balanced against the need *Page 471 
for the efficient and effective administration of justice. We agree with the State and find that, under the particular facts of this case, no error occurred when the circuit court interpreted Harcourt's April 20, 1998, letter as a motion to withdraw and appointed new counsel to represent Hamm. We further find, based on the trial court's documented difficulties in dealing with Harcourt after he moved from the area, and based on the court's finding that Harcourt obstructed the orderly progress of the case, as well as our own evaluation of the various motions and letters from Harcourt in this case, that the trial court did not abuse its discretion when it declined to reappoint Harcourt to represent Hamm at the hearing.
The Sixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel in criminal prosecutions. The Supreme Court has recognized that the accused should be afforded a fair opportunity to select counsel of his choice to defend him. E.g., Powell v. Alabama,287 U.S. 45, 54, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The proceeding we are reviewing, however, is not a criminal prosecution. Doyle Hamm was convicted of capital murder in 1987. He was represented by counsel at his trial and on direct appeal, in accordance with constitutional principles. This Court is now reviewing the denial of Hamm's postconviction petition; a postconviction petition is a discretionary legal action which Hamm pursued against the State of Alabama. Legal principles emanating from the Sixth Amendment have no direct application here.
Alabama courts have long held that postconviction proceedings are not "critical stages" of a prosecution, and are instead civil in nature.
 "Initially, we observe that this Court has held that postconviction proceedings are civil proceedings and not criminal proceedings as Click contends. See Carroll v. State, 462 So.2d 789 (Ala.Cr.App. 1984) (`Coram nobis [predecessor to a Rule 32 proceeding] is treated procedurally as a cross between a civil and a criminal action; it is a new civil action.'); Hobson v. State, 425 So.2d 511 (Ala.Cr.App. 1982) (`even though a coram nobis petition seeks relief from a criminal judgment, it is a civil proceeding.'); Behel v. State, 405 So.2d 51
(Ala.Cr.App. 1981) (`Coram nobis proceedings are civil in nature and the burden of proof is on appellant to show that he [is] entitled to relief.'); Pittman v. State, 50 Ala.App. 712, 282 So.2d 332
(1973), opinion supplemented, 52 Ala.App. 708, 295 So.2d 431 (1974) (coram nobis is `independent civil proceeding').
 "The United States Supreme Court has also recognized that postconviction proceedings are civil in nature. In Pennsylvania v. Finley, 481 U.S. 551, 556-57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), that Court stated:
 "`Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See Fay v. Noia, 372 U.S. 391, 423-2[4], 83 S.Ct. 822, 841, 9 L.Ed.2d 837 (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. United States v. MacCollom, 426 U.S. 317, 323, 96 S.Ct. 2086, 2090-2091, 48 L.Ed.2d 666 (1976). . . .'
 "The wording of Rule 32, Ala. R.Crim. P., further supports this Court's conclusion that Rule 32 proceedings are civil in nature. First, there is no right to counsel *Page 472 in a postconviction proceeding, Mayes v. State, 563 So.2d 38 (Ala.Cr.App. 1990), and Rule 32.7(c), Ala. R.Crim. P., second, the action is commenced by the defendant's filing a petition for postconviction relief in the county where he was convicted, Rule 32.6(a), Ala. R.Crim. P.; third, the inmate must either pay a civil court filing fee or apply for indigency status, Rule 32.6(a), Ala. R.Crim. P.; and fourth, the petitioner bears the burden of proving that he is entitled to relief, Rule 32.3, Ala. R.Crim. P."
State v. Click, 768 So.2d 417, 419 (Ala.Crim.App. 1999) (footnote omitted; emphasis and bracketed language added).
Even the Sixth Amendment guarantee to counsel does not guarantee that the accused will be represented by the lawyer he most prefers. Wheat v. United States, 486 U.S. 153, 159,108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). No amendment, statute, or caselaw guarantees the absolute right to representation by any particular counsel or by counsel of the accused's choice, even at a criminal trial. Briggs v. State, 549 So.2d 155, 160
(Ala.Crim.App. 1989). Rather, this Court has held that a defendant's right to counsel of his choice must be balanced against the need for the efficient and effective administration of justice. Cobble v. State, 710 So.2d 539, 542 (Ala.Crim.App. 1998).
Hamm urges that Ex parte Pace, 775 So.2d 814 (Ala. 2000), andEx parte Walker, 675 So.2d 408 (Ala. 1996), require a reversal of the trial court's order and the holding of another Rule 32 hearing at which he is represented by Harcourt. These cases do not, in fact, support Hamm's position. Pace and Walker each faced a retrial on a charge of capital murder, and in each case the Alabama Supreme Court held that the circuit court had abused its discretion in denying a nonresident attorney's motion to represent the defendant at trial pro hac vice.[4] In each case, the Alabama Supreme Court also held that the defendant had a clear legal right to be represented by the selected attorney who was willing to serve in a pro bono capacity. The right to counsel at trial was implicated in Ex parte Pace and Exparte Walker. Hamm was not seeking counsel of his choice to represent him at trial, but at a civil hearing on the petition he filed in 1991. This case is further distinguishable. The Alabama Supreme Court stated in Ex parte Pace:
 "In Walker, as is the case here, the defendant requested representation by a lawyer who had agreed to work without compensation from the State. We held in Walker:
 "`These facts are analogous to a factual setting where a nonindigent criminal defendant procures counsel of his or her choice. A trial judge would have no authority to bar that attorney from representing that defendant, so long as that attorney was qualified to practice law in this State and the representation would not frustrate the public interest in the fair and efficient administration of justice. . . .'
 "Walker, 675 So.2d at 410.
 "The evidence indicates that [counsel] timely filed for admission pro hac vice, that she is willing to serve in a pro bono capacity, and that she does not desire to delay Pace's trial or to disrupt the trial proceedings." *Page 473 Ex parte Pace, 775 So.2d at 815 (emphasis added).
The circumstances in this case are not analogous to those inEx parte Pace or in Ex parte Walker, and those cases do not warrant a reversal here.
Hamm was not a capital murder defendant on trial for his life. He was the petitioner in a discretionary postconviction proceeding. He had no right to counsel in the proceeding, and he clearly had no right to counsel of his own choice. Finally, the record reflects that reappointment of Harcourt to represent Hamm would have resulted in further delay of a case that had languished in circuit court for years. Harcourt's representation would have frustrated "the public interest in the fair and efficient administration of justice." Ex parte Walker,675 So.2d at 410.
The zeal expressed in Harcourt's pleadings and letters to the court might have been perceived as arrogance. Harcourt's April 20, 1998, letter to the circuit court clearly indicated that, because he was living in Arizona, had two small children, and was "expected to be engaged in scholarship full-time" in his faculty position, he was actively seeking another attorney to "replace him" in his "representation of Doyle Lee Hamm." (C. 1895.) When the circuit court granted what it perceived to be a motion to withdraw and appointed new counsel, Harcourt wrote to the judge, expressing his surprise at the court's decision and arguing that he had not requested to withdraw from the case immediately. In the letter, Harcourt requested that, at the very least, he be allowed to represent Hamm as cocounsel. (C. 1613.) Harcourt later filed a motion in which he requested that the hearing be rescheduled at a time convenient for him — a time that would not interfere with his midweek academic responsibilities. Harcourt also asserted that he "should be notified of all actions taken in this case." (C. 1883-84.)
The circuit court's extensive order denying Harcourt's request to be reappointed to represent Hamm details the difficulties it had experienced in contacting Harcourt after he had relocated without notifying the court of his new address and in moving the case through the postconviction process. The court found that Harcourt was obstructing the orderly progress of the case. Our review of the record of these proceedings, particularly beginning with Harcourt's letter of April 20, 1998, convinces us that the trial court correctly determined that Harcourt was impeding the fair and efficient administration of justice. This fact, too, distinguishes Hamm's case from Ex parte Walker and Ex partePace. Given the distinctions discussed above, we can only conclude that the trial did not abuse its discretion when it interpreted Harcourt's April 20, 1998, letter as a motion to withdraw and granted it, and when the court appointed other counsel to represent Hamm and declined to reappoint Harcourt. The court was understandably frustrated by Harcourt's attempts to manipulate the legal process and to interfere with the progress of the case. Further, as the State noted in its brief, Harcourt's reference in his April 20 letter to some attempted "resolution" of the case seems bizarre. It appears to this Court that, given the facts that Harcourt had represented Hamm since at least 1991 when Hamm filed the Rule 32 petition and that he could have pursued this "resolution" of the case years before the hearing on his petition was scheduled, Harcourt's true intention may have been only to further delay this case by whatever means possible. Therefore, as the court concluded, it was not in Hamm's best interest that Harcourt be reappointed. *Page 474 
Based on the foregoing, we conclude that Hamm is not entitled to any relief on this claim of error.[5]
 II.
In Issue II of his brief to this Court, Hamm contends that the circuit court "completely abdicated its role as neutral arbiter" when it adopted and signed the proposed order submitted by the Attorney General after the hearing in this case. (Hamm's brief at p. 10; emphasis in original.) He requests that we "remand the case to the lower court with instructions that it act as a judge in this case." (Hamm's brief at p. 10.) Hamm further asserts, "This case is an embarrassment to the State of Alabama and the Alabama judiciary." (Hamm's brief at p. 10) The Attorney General responds, "While such florid language might be more appropriately enlisted in condemning the crime to which Hamm confessed, the claim is without merit and should be denied." (State's brief at p. 37.)
The State argues, and Hamm acknowledges, that nothing in Alabama law precludes a trial court from adopting an order submitted by one of the parties, as long as the order accurately reflects the court's findings and conclusions. E.g., Sockwell v.State, 675 So.2d 4, 32 (Ala.Crim.App. 1993). In arguing his issue, Hamm does not cite any specific findings or conclusions in the order that are unsupported by the record or the law. Rather, he condemns the fact that the court adopted the State's proposed memorandum verbatim and argues that doing so is improper because, he says, the court should have decided the merits of the petition "based upon its own independent judicial labors and study." (Hamm's brief at p. 14.) We disagree with Hamm.
This Court has previously stated:
 "`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301
(1990).'
 "Wright v. State, 593 So.2d 111, 117-18
(Ala.Cr.App. 1991), cert. denied, 506 U.S. 844, 113 S.Ct. 132, 121 L.Ed.2d 86 (1992)."
Holladay v. State, 629 So.2d 673, 687-88 (Ala.Crim.App. 1992),cert. denied, 629 So.2d 673 (Ala. 1993), cert. denied,510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994). See alsoDobyne v. State, 805 So.2d 733, 741 (Ala.Crim.App. 2000),aff'd, 805 So.2d 763 (Ala. 2001). *Page 475 
We have reviewed the evidence presented to the circuit court and the order entered by the court at the conclusion of the Rule 32 proceeding. Nothing in the record causes us to doubt that the order represents the circuit court's independent judgment as to the facts and as to the application of the law to those facts. No error occurred when the circuit judge adopted the order drafted by the State.
 III.
In Issue III of his brief to this Court, Hamm argues that he is entitled to a reversal because the record in this case does not contain a transcript of the March 6, 1995,[6] prehearing conference. He contends that the hearing addressed issues of procedural default and that the transcript of that hearing is somehow crucial to the "claim concerning the improper disbarment [sic] of Mr. Harcourt." (Hamm's brief at p. 15.) Hamm argues that the fact that the record was incomplete would violate his rights to due process and full appellate review to which all death penalty cases are entitled. After the transcript in this proceeding was prepared, Hamm filed a motion to supplement the record. The circuit court entered an order addressing the requests in the motion, and it stated that a transcript of the pretrial hearing conducted on March 6, 1995, could not be found and was not available. (Preface to Supplement.)[7]
First, we note that the scope of this Court's review at this juncture is limited to the review of the Rule 32 proceedings. The case was previously before us on direct appeal, and at that time we conducted the full review of the trial and sentencing proceedings, as we are required to do in all capital cases on direct appeal. Hamm v. State, 564 So.2d 453, 463-64
(Ala.Crim.App. 1989). The Alabama Supreme Court, on certiorari review, also conducted a plain error review of the proceedings.Ex parte Hamm, 564 So.2d 469, 473 (Ala. 1990). To the extent Hamm argues that the missing transcript would preclude plain error review of the Rule 32 proceedings, he is mistaken. The Alabama Supreme Court recently stated:
 "The correct reading of Rule 39(a)(2), Ala. R.App. P., permits plain-error review only with respect to the certiorari petition that arises from the direct appeal of the death-penalty sentence to the Court of Criminal Appeals. Although this Court has not previously stated this construction of the plain-error rule, the Court of Criminal Appeals has consistently applied it:
 "`In every appeal from the denial of postconviction relief under Rule 32 in a death-penalty case, this court has held that the plain-error rule does not apply in Rule 32 proceedings and that the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed. Thompson v. State, 615 So.2d 129
(Ala.Cr.App. 1992); Cade v. State, 629 So.2d 38, 41
(Ala.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994); Neelley v. State, 642 So.2d 494, 496 (Ala.Cr.App. 1993), cert. quashed, 642 So.2d 510 (Ala. 1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995); State v. Tarver, 629 So.2d 14, 19 (Ala.Cr.App. *Page 476 
1993); Davis v. State, 720 So.2d 1006, 1013
(Ala.Cr.App. 1998); Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App. 1995); Horsley v. State, 675 So.2d 908 (Ala.Cr.App. 1996); Grayson v. State, 675 So.2d 516 (Ala.Cr.App. 1995), cert. denied, 519 U.S. 934, 117 S.Ct. 309, 136 L.Ed.2d 225 (1996); Payne v. State, 791 So.2d 383 (Ala.Cr.App. 1999); Boyd v. State, 746 So.2d 364 (Ala.Cr.App. 1999); Lawhorn v. State, 756 So.2d 971 (Ala.Cr.App. 1999); Jones v. State, 753 So.2d 1174 (Ala.Cr.App. 1999).'"
 "Siebert v. State, 778 So.2d 842, 847
(Ala.Crim.App. 1999)."
Ex parte Dobyne, 805 So.2d 763, 766-67 (Ala. 2001).
Alabama law does not permit this Court to conduct a plain error review of these Rule 32 proceedings or a second plain error review of Hamm's trial proceedings.
Second, we note that the record suggests that Hamm is mistaken in his allegations about the topics discussed at the hearing. He contends the parties discussed procedural bars and that there was a discussion relevant to his claim of "improper disbarment." Our own review of the record suggests that neither of these matters was discussed, and that the hearing was a rather routine status conference that was conducted soon after Judge Fred Folsom retired and the case was transferred to Judge Hardeman. The case action summary reveals that, on January 3, 1995, Judge Folsom entered an order scheduling a March 6, 1995, conference to address discovery matters and other pending motions in the case. (C. 5.) On March 6, 1995, Judge Hardeman entered the following in the case action summary: "ORDERED, after conference with attorneys, discovery in this Rule 32 proceeding shall be completed within 120 days. Extensions of time therefor will be granted only on showing of good cause. A prehearing conference is scheduled for July 31, 1995 at 10:00 a.m." (C. 5.)
Hamm's assertion that the parties argued about procedural default issues appears unfounded. The record discloses that the State filed a motion for partial dismissal on July 31, 1995, seeking dismissal of some of the claims on procedural grounds. (C. 1934-39.) On August 31, 1995, Harcourt sent a letter to Judge Hardeman, requesting a 60-day extension of time to file his response to the State's motion to dismiss. (C. 1901.) On the letter is a handwritten notation dated October 23, 1995, granting a 60-day extension. (C. 1901.) Hamm filed a response to the State's motion, but the response contains no filing date. (C. 1905-33.) The case action summary indicates that on October 31, 1995, Judge Hardeman entered an order setting the hearing on January 8, 1996, on the State's motion for partial dismissal. (C. 5.) The record contains the transcript of the hearing held on January 8, 1996. Judge Hardeman opened the hearing by stating, "We are here on the motion of the state for partial dismissal." (Supp. 1193.) Harcourt and Assistant Attorney General Beth Hughes argued their respective positions regarding the applicability of the procedural bars to this proceeding. It appears that, when the State filed its motion on July 31, 1995, it also filed a proposed order dismissing some of the Rule 32 claims on procedural grounds. (C. 1940-42.) The order in the record is not signed. Subsequently, at the Rule 32 hearing, Judge Hardeman stated that he had dismissed some of the claims on procedural grounds, by an order dated January 29, 1996. (R. 3-4.) Counsel for the State said that she had not seen that order, but she acknowledged that the State had filed a motion for partial dismissal. (R. 4.) The circuit court's final order in this case addresses *Page 477 
all of the claims, including those it said it had already determined were procedurally barred. (C. 29-117.)
Therefore, it appears that no discussion of procedural default was planned, and no argument on this issue took place at the March 6, 1995, hearing. All motions related to the application of procedural bars and argument on those motions occurred after that date. Moreover, as indicated in Part I of this opinion summarizing the events that took place as a result of the court's granting what it perceived to be Harcourt's motion to withdraw from the case, it is apparent that those events were precipitated by Harcourt's letter dated April 20, 1998. There is no indication that the status conference Judge Hardeman held on March 6, 1995, was relevant to those events, which occurred more than three years after the hearing at issue.
The March 9, 1998, notation in the case action summary indicates that Judge Hardeman scheduled the final hearing on the petition for June 29, 1998. The judge ordered that notice of the hearing be served on the State's attorneys and on "Petitioner's counsel, Prof. Bernard E. Harcourt." (C. 5.)
Our review of the record clearly indicates that neither of the events Hamm contends were discussed at the March 6, 1995, hearing and that he contends are crucial to our review of the case were, in fact, addressed at the hearing. Rather, it appears that the hearing was conducted to give Judge Hardeman, who was new to the bench, the opportunity to discern the status of the case. Upon learning from counsel that discovery had not been completed, the court set a deadline for discovery and set a prehearing conference at the conclusion of the time allowed for discovery.
Although we conclude that it is unlikely that the issues Hamm alleges were discussed at the hearing were discussed at that hearing, it remains undisputed that a hearing was held on March 6, 1995, and that the notes or tapes of the hearing could not be found so the hearing was not transcribed.
 "Where the transcript or record is incomplete, two rules have evolved. The first applies to the situation where the appellant is represented on appeal by the same counsel that represented him at trial. In that case, the failure to supply a complete record is not error per se and will not work a reversal absent a specific showing of prejudice. In other words, in such a case, the appellant must show that failure to record and preserve the specific portion of the trial proceedings complained of visits a hardship upon him and prejudices his appeal. The second applies to the situation where the appellant is represented by new counsel on appeal. When he is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to warrant reversal. Ex parte Godbolt, [546 So.2d 991 (Ala. 1987),] adopting the rule established in United States v. Selva, 559 F.2d 1303 (5th Cir. 1977). `We do not advocate a mechanistic approach to situations involving the absence of a complete transcript of the trial proceedings. We must, however, be able to conclude affirmatively that no substantial rights of the appellant have been adversely affected by the omissions from the transcript.' Ex parte Godbolt, 546 So.2d at 997, quoting with approval, United States v. Selva, 559 F.2d at 1305-06."
Ingram v. State, 779 So.2d 1225, 1280-81 (Ala.Crim.App. 1999),aff'd, 779 So.2d 1283 (Ala. 2000), cert. denied,531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001). *Page 478 
The State correctly argues that, because Harcourt remains cocounsel on appeal and because he represented Hamm at the March 6, 1995, hearing, he should be aware of what occurred at the hearing. "Thus, the appellant has the burden of showing that the incomplete record caused him prejudice. He has not satisfied that burden." Pierce v. State, 851 So.2d 558, 573-74 (Ala.Crim.App. 1999), remanded, 851 So.2d 606 (Ala. 2000). Furthermore, as we discussed above, the issues Hamm alleges were raised and decided at the March 6 hearing — procedural default and the exclusion of Harcourt as counsel for Hamm — do not appear to have been addressed at that hearing. While Hamm argues that "this Court does not have any information before it regarding what transpired at the missing hearing" (reply brief at p. 20), we disagree, and find that the remaining portions of the record indicate the substance of the hearing. We are therefore able to conclude that none of Hamm's substantial rights were adversely affected by the missing transcript. Hamm is not entitled to any relief on this claim.
 IV.
In Issue IV of his brief, Hamm argues that this Court must remand the cause for a new hearing because the circuit court impermissibly excluded the affidavit of Dr. Dale Watson, a psychologist who submitted a written evaluation of Hamm in July 1999 based on Watson's examination of Hamm in January 1996. (C. 160.) When Hamm offered the affidavit at the Rule 32 hearing, the State objected on grounds that it would not have the opportunity to cross-examine the psychologist. (R. 18-19.) The court reserved its ruling until all the evidence had been presented, at which time, the court stated, it would sustain the State's objection and that the affidavit would not be admitted into evidence. (R. 63.) In its written order, the court further noted that Dr. Watson had not received his doctorate at the time of Hamm's trial and that he would not have been able to testify on Hamm's behalf at trial. (C. 80 n. 2.) On appeal, Hamm argues that the affidavit should have been admitted pursuant to Rule 702, Ala. R. Evid., which permits expert testimony if that testimony will assist the trier of fact. He also argues that he was entitled to have the affidavit considered because it was part of his defense, and he notes that postconviction counsel "knew about Dr. Watson's evidence, knew how to reach Dr. Watson, and had spoken to Dr. Watson, . . ., and yet did not call him to testify at the hearing." (Hamm's brief at p. 21.)
Rule 32.9(a), Ala. R.Crim. P., provides that a court has the discretion to take evidence by affidavit. As Hamm argues on appeal, postconviction counsel was aware of Dr. Watson and the substance of his testimony, but did not call him to testify at the hearing. If the court had admitted the affidavit, the State would not have been able to examine Dr. Watson about his education and expertise, his testing methods, the validity of his conclusions,[8] or any other areas appropriate for cross-examination. As this Court stated in Callahan v. State
when addressing similar circumstances:
 "`The admission of the affidavit would have denied the State its right to cross-examine the witness. Additionally, the State did not know of the existence of the affidavit until the evidentiary hearing, so the State was also deprived of the opportunity to prepare a counter affidavit.' *Page 479 
 ". . . We cannot say the trial court abused its discretion when it refused to consider the affidavit in the absence of evidence that the affiant was actually unavailable, especially considering that the testimony was offered in such a fashion. . . . Presenting the testimony by affidavit prevented the State from confronting the affiant, and did not allow the trial court the opportunity to closely examine the complete testimony. . . . Rule 32.9(a), Ala.R.Crim.P."
Callahan, 767 So.2d 380, 403 (Ala.Crim.App. 1999), cert.denied, 767 So.2d 405 (Ala. 2000). See also McNair v. State,706 So.2d 828, 838 (Ala.Crim.App.), cert. denied, 706 So.2d 828
(Ala. 1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396,140 L.Ed.2d 654 (1998).
Based on the foregoing, we find no error in the trial court's decision to exclude the affidavit of Dr. Watson. Hamm is not entitled to any relief on this claim.
 V.
In Issue V of his brief, Hamm argues that the denial of the Rule 32 petition must be reversed and he must receive a new sentencing hearing because, he says, the Tennessee convictions introduced into evidence at the 1987 sentence hearing were "unconstitutionally obtained." The State argues that this claim is procedurally barred by Rule 32.2(a)(3) and (5), Ala. R.Crim. P., because it could have been raised at trial or on appeal, but it was not. We agree with the State. The alleged unconstitutionality of the 1978 Tennessee convictions could have been raised at trial or on appeal. Because it was not raised, this claim is barred from postconviction review.
Hamm contends, in the alternative, that trial counsel's performance was deficient because he "could have challenged theTennessee convictions in Tennessee courts and had the courtsaddress the merits of the claims in 1987." (Hamm's brief at p. 25) (emphasis in original). Hamm's assertion that Alabama trial counsel had a duty to challenge in a Tennessee court the merits of the nine-year-old convictions so that he could then prevent consideration of the prior convictions at the 1987 capital sentencing hearing is not supported by any legal authority.
The trial court correctly determined that the substantive claim is procedurally barred, and the alternative argument regarding ineffective assistance is without merit. Hamm is not entitled to any relief on this claim.
 VI.
In Issue VI of his brief, Hamm argues that the circuit court erred when it denied him relief on the basis of his assertion in his petition that the prosecution withheld exculpatory information. Specifically, he alleges that statements from prosecution witness Kathryn Flanagan were not disclosed until defense counsel began to cross-examine her at trial. He also alleges that the prosecution failed to disclose sealed records of his codefendant, Doug Roden.
The circuit court denied relief as to the portion of the claim regarding Kathryn Flanagan's statements on procedural bar grounds. (C. 32.) The court determined, and we agree, that the claim was barred from postconviction review because it was raised and addressed at trial. Rule 32.2(a)(2), Ala. R.Crim. P. (T. 1335-36.)[9] The claim was also procedurally barred because it could have been, but was not, raised on appeal. Rule 32.2(a)(5), Ala. R.Crim. P. The court did not address the *Page 480 
portion of the claim relating to the sealed records of codefendant Doug Roden because that claim was not raised in the petition. The claim was not presented to the trial court, and it cannot now be considered on appeal. See, e.g., Morrison v.State, 551 So.2d 435, 437 (Ala.Crim.App. 1989).
Even if the claim had been presented in the postconviction petition, it would have been procedurally barred from review because it could have been, but was not, raised at trial and on direct appeal. Rule 32.2(a)(3), (5), Ala. R.Crim. P.
 VII.
In Issue VII of his brief to this Court, Hamm claims that the trial court erred when it denied postconviction relief on that the ground that he did not receive the effective assistance of counsel at trial or on appeal. We disagree.
 A. Legal Standard for Evaluating Claims of Ineffective Assistance of Counsel.
The legal standards relevant to consideration of claims of ineffective assistance of counsel are well-established:
 "`In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "`"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
 "`466 U.S. at 687, 104 S.Ct. at 2064.
 "`"The performance component outlined in Strickland
is an objective one: that is, whether counsel's assistance, judged under `prevailing professional norms,' was `reasonable considering all the circumstances.'" Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994), cert. denied, [514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995)], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "`The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall `outside the wide range of professionally competent assistance.' [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066." Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that *Page 481 
counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531
(Ala.Cr.App. 1985). "This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326
(Ala.Cr.App. 1994).
 "`"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
 "`Strickland, 466 U.S. at 689, 104 S.Ct. at 2065
(citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "`"Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out come.' [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.'
 "`Daniels, 650 So.2d at 552.
 "`"When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
 "`Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
 "`In a Rule 32 proceeding, the petitioner has "the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.3, Ala.R.Crim.P. See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326
(Ala.Cr. *Page 482 
App. 1994); Elliott v. State, 601 So.2d 1118
(Ala.Cr.App. 1992).'
 "Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App. 1997), cert. denied, 717 So.2d 6 (Ala. 1998).
 "Moreover, `[a] finding of no plain error is one factor to consider when assessing the performance of counsel.' Fortenberry v. State, 659 So.2d 194, 200
(Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995), quoting Hallford v. State, 629 So.2d 6, 10 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). `"A finding of no manifest injustice under the `plain error' standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."' Williams v. State, 783 So.2d 108, 133 (Ala.Cr.App. 2000), quoting State v. Clark, 913 S.W.2d 399, 406
(Mo.Ct.App. 1996). See also Thomas v. State, 766 So.2d 860 (Ala.Crim.App. 1998)."
Dobyne v. State, 805 So.2d 733, 742-44 (Ala.Crim.App. 2000).
 B. Alleged Conflict of Interest
In Part VII. B. of his brief, Hamm argues that one of his trial attorneys, Hugh Harris, was laboring under a conflict of interest because, on the third day of trial, Harris was appointed special assistant attorney general. This claim was not raised in any of Hamm's petitions for postconviction relief. Therefore, it has been waived for purposes of review. Morrison v. State,551 So.2d 435 (Ala.Crim.App. 1989). Even if the claim had been properly presented, Hamm would not be entitled to any relief. Harris was appointed a special assistant to pursue condemnations on a highway project. There was no evidence of an actual conflict or any adverse effect on his counsel's performance.
 C. Hamm's Counsel Rendered Effective Assistance
In Parts VII.C. and VII.D. of his brief to this Court, Hamm argues, as he did in the postconviction proceedings in the circuit court, that he was denied the effective assistance of counsel at both phases of his trial and on appeal.[10] The circuit court determined that Hamm received effective assistance at trial and on appeal. (C. 40-113.) We have reviewed the trial record and the record of the postconviction proceedings and, for the reasons discussed below, we agree with the trial court. The court properly denied Hamm's claim that he received ineffective assistance of counsel at trial and on appeal.
 1. Guilt-Phase Issues
In Part VII.C. of his brief to this Court, Hamm argues that trial counsel rendered ineffective assistance at the guilt phase of his trial. The specific allegations Hamm discussed in his brief are addressed below.
a. Hamm argues that trial counsel improperly failed to request a jury instruction on felony-murder. The trial court instructed the jury on voluntary intoxication and instructed the jury that a finding of voluntary intoxication would reduce the capital murder to manslaughter. (T. 1182.) Hamm now argues that the jury should have been given a third option — to convict him of felony-murder. He contends that, because "most reasonable jurors" do not view manslaughter as a serious crime associated with a serious *Page 483 
sentence, the failure to give a jury charge on felony-murder undermined the reliability of the jury's verdict.
At the postconviction hearing, attorney Williams testified that she and cocounsel discussed a felony-murder charge with the trial judge, but the facts did not support the charge. Williams testified: "The coroner's report showed that [the victim] had been shot from approximately — I don't remember — 18 inches kind of sticks in my head, and a charge like that wasn't supported by the facts presented at trial, and we were concerned that it might be confusing to the jury also." (R. 55.)
Following the postconviction hearing, the trial court determined that trial counsel's performance was not deficient in failing to request an instruction on felony-murder because the evidence did not support that charge and that Hamm did not establish any prejudice by the failure to request the instruction. (C. 44-47.) We agree.
First, the evidence did not support a jury instruction on felony-murder. The evidence indicated that Hamm intended to commit both the robbery and the murder. Hamm shot the victim at close range after he forced the victim onto the floor behind the counter in the motel.
 "Even in a capital case a defendant is not entitled to instructions on a lesser included offense unless there is a rational theory from the evidence presented supporting such an instruction. Roberts v. State, 735 So.2d 1244 (Ala.Cr.App. 1997). As we stated in Jenkins v. State, 627 So.2d 1034, 1049-50
(Ala.Cr.App. 1992), aff'd, 627 So.2d 1054 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994):
 "`The appellant next argues that the trial court erred in not instructing the jury on the lesser included offense of felony-murder. "An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position." McMillian [v. State], 594 So.2d [1253] at 1267 [(Ala.Cr.App. 1991)]. (Emphasis added.) As Judge Bowen stated in White v. State, 587 So.2d 1218, 1231 (Ala.Cr.App. 1990), aff'd, 587 So.2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992):
 "`"`The purpose of the felony-murder doctrine is to hold felons accountable for unintended deaths caused by their dangerous conduct.' W. LaFave and A. Scott, 2 Substantive Criminal Law § 7.5 at 210 (1986)."
 "`(citations omitted). There was no evidence to support an instruction on felony-murder. In the instant case the evidence revealed that the victim died as a result of manual strangulation. "There is no rational basis for a verdict convicting him of felony-murder." White, 587 So.2d at 1231; § 13A-1-9(b), Code of Alabama 1975.'
 "Also, we stated in Dobyne v. State, 672 So.2d 1319, 1345 (Ala.Cr.App. 1994), on remand, 672 So.2d 1353 (Ala.Cr.App. 1994), aff'd, 672 So.2d 1354 (Ala. 1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571, 134 L.Ed.2d 670 (1996):
 "`Lesser included offense instructions should be given when there is a "reasonable theory from the evidence" supporting such an instruction. Jenkins [v. State, 627 So.2d 1034 (Ala.Cr.App. 1992), aff'd, 627 So.2d 1054 (Ala. 1993)]. Here, there was no reasonable theory to support a charge on felony-murder. "`The purpose of the felony-murder doctrine is to hold felons accountable *Page 484 
for unintended deaths caused by their dangerous conduct.'" White v. State, 587 So.2d 1218, 1231
(Ala.Cr.App. 1990), aff'd, 587 So.2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992). Here, the evidence did not show that the shootings were unintended. The court did not err in not instructing the jury on the lesser included offense of felony-murder.'"
Hall v. State, 820 So.2d 113, 138-39 (Ala.Crim.App. 1999),aff'd, 820 So.2d 152 (Ala. 2001).
A gunshot from close range to the temple of a prone victim cannot support Hamm's allegation that the homicide was unintentional. Therefore, Hamm was not entitled to a felony-murder instruction, and trial counsel did not render deficient performance when they failed to request that instruction.
Second, the jury that heard Hamm's case was instructed on voluntary intoxication and on the lesser-included offense of manslaughter. The jury rejected that lesser offense and convicted Hamm of the greater offense of capital murder. Any speculation that the jury might have found Hamm guilty of felony-murder is eliminated by the fact that it found him guilty of capital murder. E.g., Buskey v. State, 650 So.2d 605, 612
(Ala.Crim.App. 1994). Even if a jury instruction on felony-murder should have been given, Hamm could not establish that he was prejudiced by his attorneys failure to request that instruction, because his jury rejected the option of finding Hamm guilty of manslaughter.
Hamm was not entitled to a jury instruction on felony-murder, and his trial counsel were not ineffective for failing to request that instruction.
b. Hamm also argues that trial counsel "unreasonably failed" to object to the jury instruction on accomplice liability, because the court failed to instruct the jury that the non-triggerman accomplice had to have a particularized intent to kill. He claims that the same instruction was found to be reversible error inTomlin v. State, 591 So.2d 550 (Ala.Crim.App. 1991). The trial court found no deficient performance, because the accomplice liability instruction given by the trial court was proper. (C. 47-54.)
We agree with the court below that the jury charge adequately addressed the principles of accomplice liability and the specific intent to kill. (T. 1170-71, 1175-80.) There being no reason for trial counsel to object to the charge, their failure to object was not deficient performance. The trial court correctly denied Hamm relief on this claim.
c. Hamm contends that trial counsel failed to "adequately challenge" for cause veniremembers R.M., K.M., and S.B. He appears to argue that R.M. and K.M. were unalterably in favor of imposing the death penalty. The trial court denied the claim, finding that counsel did, in fact, challenge the veniremembers R.M. and K.M. (C. 84.) The trial court's finding is supported by the record on direct appeal from Hamm's trial. (T. 220.) The court further noted that the veniremembers stated that they could set aside their personal feelings, would follow the trial court's instructions concerning the weighing of aggravating and mitigating circumstances, and would vote for a sentence of life imprisonment without the possibility of parole if the mitigating circumstances outweighed the aggravating circumstances. (C. 83-85.) The trial record supports the findings of the postconviction court. (T. 201-08, 213-16.) Hamm failed to demonstrate how counsel failed to "adequately challenge" R.M. and K.M., so the trial court correctly found that counsel's performance was not *Page 485 
deficient. Moreover, because the veniremembers' responses to voir dire questioning indicate that they were not unalterably in favor of the death penalty, the trial court correctly determined that Hamm had failed to demonstrate that "adequate challenges" by trial counsel would have led to the exclusion of these veniremembers from the jury or would have changed the result of his trial. We agree with the trial court that Hamm failed to establish deficient performance or prejudice as to this portion of his claim.
Hamm also argues that trial counsel should have challenged veniremember S.B. for cause because the victim's son was in the second-grade class S.B. taught. Hamm argues that, as a matter of constitutional law, S.B. should have been presumed to be biased against him. Hamm cites no law to support his assertion that S.B. should have been presumed biased as a matter of constitutional law. Moreover, the law is contrary to Hamm's position.
The trial court asked the venire a series of questions, including, "[D]o you have any special interest? Do you have any interest in this case that would [influence] your feeling one way or the other that you wanted at this point to convict him or to acquit him? Do you have a fixed opinion?" (T. 94-95.) S.B. responded, "The little boy whose father was killed is in my room in school." (T. 95.) In response to other questions, S.B. said that she had given no one any assurances that she would convict Hamm or that she would acquit Hamm. The court then asked if S.B. had a fixed opinion as to Hamm's guilt, and S.B. said, "No, sir." (T. 95.) When the veniremembers were asked whether they knew any member of the victim's immediate family, S.B. again stated that she taught the victim's son at school. (T. 144.)
 "In order to justify a challenge for cause, there must be a statutory ground or some matter that imports absolute bias or favor and leaves nothing to the discretion of the trial court. Nettles v. State, 435 So.2d 146 (Ala.Crim.App.), aff'd, 435 So.2d 151 (Ala. 1983). Knowledge of the victim or the victim's family is not among the statutory grounds set out in § 12-16-150, Ala. Code 1975. Unless a prospective juror indicates that his relationship with the victim would prevent him from being fair and impartial, a challenge for cause should be denied. Dunning v. State, 659 So.2d 995 (Ala.Crim.App. 1994)."
Ray v. State, 809 So.2d 875, 885 (Ala.Crim.App. 2001), cert.denied, 809 So.2d 891 (Ala. 2001).
S.B. was not subject to exclusion for cause merely because she knew the victim's son. It might have been reasonable or prudent to grant the defendant's challenge for cause because S.B. had been in a position of trust with the victim's son. Nevertheless, S.B. gave no indication that she would be unable to render a fair and impartial decision because she knew the victim's son. Therefore, the Rule 32 trial court correctly determined that defense counsel did not render deficient performance when they failed to move to challenge S.B. for cause, and appellate counsel did not render deficient performance when they failed to raise this claim on appeal. (C. 88-89.) Moreover, no prejudice resulted from counsel's failure to raise this claim, because S.B. would not have been removed for cause based on her responses to voir dire questioning.
d. At pages 88-89 of his brief to this Court, Hamm includes a list of more than 20 allegations of ineffective assistance of trial counsel, and he offers no citations to the record or to any legal authority to support his specific allegations. *Page 486 
Instead, Hamm states that he "has set out in detail the deficiencies of counsel's performance in his petition for habeas corpus relief," and he invites this Court to examine the claims comprehensively. This type of "scattergun" approach to appellate argument is forbidden by Rule 28(a)(5), Ala. R.App. P. That rule requires parties to include in their appellate briefs an argument section with citations to relevant legal authorities and to portions of the record relied on in their claims for relief. Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed. Gay v. State,562 So.2d 283, 289 (Ala.Crim.App. 1990).[11] Accordingly, we hold that Hamm waived for purposes of appellate review in this Court the claims set out at pages 88-89 of his brief, with the exception of the claims discussed in a., b., and c., above. Hamm presented at least some argument with citations to the record and to legal authorities as to the claims discussed in a., b., and c., above. Hamm has forfeited any right of review to the remaining claims from the "laundry list" of claims set out on pages 88-89.
e. The trial court correctly denied Hamm's claim that he did not receive effective assistance of counsel at the guilt phase of his trial. Hamm is not entitled to any relief on this claim.
 2. Penalty-Phase Issues
In Part VII.C. of his brief, Hamm also argues that trial counsel rendered ineffective assistance at the penalty phase of his trial. The specific allegations are discussed below.
a. Hamm argues that trial counsel failed to properly investigate aggravating and mitigating circumstances for the penalty phase and failed to present "compelling evidence" at the sentencing portion of Hamm's trial. Hamm alleges that trial counsel should have discovered and entered into evidence volumes of documents, including records of the criminal history of Hamm's father, uncles, and brothers; records of Hamm's medical history, including his abuse of alcohol and other drugs; and records of Hamm's educational history. The circuit court found that trial counsel conducted an adequate investigation into Hamm's past and were well aware of the difficult circumstances in which Hamm grew up. The court further found that counsel presented much of this information by way of testimony from Hamm's sister at the sentencing hearing. (C. 79-80, 99-100, 103-111). The court further found that Hamm failed to establish any prejudice, because the evidence was cumulative and would not have affected the outcome of the proceeding. (C. 110.) As the court noted in its Rule 32 order, the sentencing court found the following nonstatutory mitigating circumstances to exist:
 "The Defendant was born February 14, 1957, and Defendant was raised by his Mother and Father and lived in Colbert County, Alabama, until 1975. Defendant was the eighth of ten children born to those parents. It appears that he had a good Mother, but no[t] much can be said of his Father. It appears that his Father was a heavy drinker and had spent time in prison. It seems that he *Page 487 
tried to instill in his children the idea that if they did not steal they weren't a `Hamm'. The Defendant's Father died in 1971 when Defendant was thirteen years old. Afterwards, he was raised by his Mother. Ruthie Murphree, his Sister, helped the Mother raise the Defendant. Ruthie is slightly older than the Defendant and has no record of criminal activity. She is married and is a housewife. The Defendant's Brothers, James, Roy, Horace, Jimmy, O'Neal, David, and Danny, all either served time in prison or are now serving time in prison. James died in 1969 and Roy hanged himself in 1978. Defendant has another Sister, Linda Hamm Murphree, age 29, who is married to Johnny Murphree and who appears to be a nice person who has never been in trouble. . . . . The fact that the Defendant and all his Brothers have prison records is certainly an indication that their Father was a terrible influence on his children. His conduct while participating in the raising of these young boys created an obstacle to the development of their character, which was, indeed, difficult to overcome. The Defendant had no control over the conduct of his Father, and, of course, this type of conduct by his Father was irresponsible and deplorable. It absolutely had a negative influence on the Defendant. It is to be noted, however, that the two girl children were able to rise above this influence and appear to be good citizens. The Defendant had a poor education and suffered from epilepsy."
(C. 106-07) (quoting T. 1374.)
The trial record further demonstrates that Hamm's sister testified that their father gave the children alcohol and told them that if they did not drink, they were not "a Hamm." (T. 1225.) Hamm's sister also testified as to Hamm's abuse of alcohol and other drugs. (T. 1227-28, 1231-32.) The sister testified about the family's living conditions when Hamm was young, and she detailed the abuse the father inflicted on the children. (T. 1220-26.)
At the postconviction hearing, trial counsel reviewed the exhibits Hamm now argues should have been admitted at his trial. One of Hamm's counsel testified that as a matter of trial strategy, he would not have introduced many of the records, because Hamm's sister could testify about the information defense counsel wanted, without putting before the jury information that would have been detrimental to Hamm, such as his complete criminal history. (R. 12-16, 50.) Attorney Harris testified that he did not believe it was necessary to introduce the documents when Hamm's sister testified. He said, "The beauty of the testimony is we could get the points out that we wanted to, whereas the documentation would have had a lot of information and evidence that I wouldn't have wanted in front of the jury." (R. 50.)
We agree with the circuit court's finding that defense counsel were not ineffective for failing to introduce at trial the records that were introduced at the Rule 32 hearing. The attorneys investigated Hamm's background and that of his family, and presented this information through the testimony of Hamm's sister. This type of strategy is virtually unassailable.Strickland v. Washington, 466 U.S. 668, 689-90, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984).
Furthermore, the trial court correctly determined that the documents would have been cumulative of evidence actually presented at sentencing. (C. 111.) We note, additionally, that the sentencing court did not disbelieve the testimony at trial, because the court cited much of it in the sentencing order. (T. 1372-1375.) *Page 488 
The postconviction trial court correctly concluded that Hamm failed to establish defective performance. In denying Hamm's Rule 32 claim, the court further noted that, even if the documents had been presented at trial, the sentencing outcome would not have been different. The court concluded that the evidence would have been cumulative of evidence presented at trial. (C. 110.) "`Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance.'" Williams v.State, 782 So.2d 811, 825 (Ala.Crim.App. 2000) (quoting Brooksv. State, 695 So.2d 176, 182 (Ala.Crim.App. 1996)). Hamm is not entitled to relief on this claim.
b. Hamm contends that trial counsel at sentencing were ineffective for failing to ensure that the evidence of two prior convictions that was presented to the jury was purged of the reference to "armed" robbery, when Hamm had been convicted of "simple" robbery. In denying relief on this claim, the postconviction trial court found that trial counsel objected to the admission of the evidence, on grounds that it referred to a charge greater than that of which Hamm was convicted. (C. 56-57.) The court further noted that the neither the jury instructions nor the findings of fact at sentencing referred to "armed" robbery. (C. 58-59.) We agree with the circuit court's determination that Hamm failed to prove deficient performance, because counsel objected on the grounds Hamm now argues. (T. 1212-13.) We further agree with the court that Hamm failed to establish prejudice, because only the convictions of "simple" robbery were introduced at trial (T. 1213-14) and considered by the trial court at sentencing (T. 1371). Hamm is not entitled to relief on this claim.
c. Hamm further argues that counsel were ineffective at sentencing because they failed to object to "inflammatory and improper arguments" made by the prosecutor. (Hamm's brief at p. 78.) Hamm argues that his attorneys failed to object when the prosecutor; made remarks inflaming the passions of the jurors and urging them to "send a message" that the community would not tolerate such killings in the county; argued that the jury had a responsibility to sentence Hamm to death; made comments suggesting he had personal expertise and exploited his position of authority.[12]
At the postconviction hearing, Hamm did not question defense counsel about their failure to object to any of the alleged instances of prosecutorial misconduct. However, as the trial court noted in its order denying Rule 32 relief, Hamm's trial attorneys testified that they made a conscious effort to avoid infuriating the jury by making needless objections. (C. 65.) The attorneys testified that they wanted to maintain a good relationship with the jury because, once Hamm's taped confession was admitted into evidence over objection, their best hope was to get a majority of the jurors to recommend a sentence of life imprisonment without parole. (R. 27, 60-61.) The foregoing is a legitimate trial strategy, and decisions regarding strategy are ones a reviewing court is loathe to *Page 489 
overturn based on the reviewing court's hindsight. Davis v.State, 720 So.2d 1006, 1013 (Ala.Crim.App. 1998), cert.denied, 525 U.S. 1149, 119 S.Ct. 1049, 143 L.Ed.2d 55 (1999).
The circuit court reviewed the prosecutor's penalty-phase closing argument in light of Hamm's claims, and determined that none of the prosecutor's arguments were improperly made and that counsel's performance was not deficient. (C. 66-71.) The court further found that Hamm had failed to prove that he was prejudiced by the instances of alleged prosecutorial misconduct. (C. 66.) As to those claims properly presented for review in Hamm's brief, we agree with the circuit's court's findings and analysis on this issue.
We further note that before the attorneys made their opening arguments at trial, the court instructed the jury that the attorneys' arguments were not evidence. (T. 249-50.) Before the penalty phase of Hamm's trial began and again before sentencing deliberations, the trial court reminded the jury to observe the instructions the court had given at the beginning of the trial. (T. 1202, 1288.) We have often held that reviewing courts presume that jurors follow a trial court's instructions. E.g., Taylor v.State, 666 So.2d 36 (Ala.Crim.App. 1994), aff'd, 666 So.2d 73
(Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928,133 L.Ed.2d 856 (1996). Trial counsel were not ineffective for failing to object to the prosecutor's arguments, and Hamm failed to establish that there was a reasonable probability that, had counsel objected to the allegedly improper comments, the outcome of the proceeding would have been different. Williams v. State,782 So.2d 811, 834 (Ala.Crim.App.), cert. denied, 782 So.2d 842
(Ala. 2000). Hamm is not entitled to any relief on this claim.
d. Hamm further argues that trial counsel were ineffective at the penalty phase because they failed to object to certain of the trial court's jury instructions. Hamm now argues that trial counsel should have objected to the following: the trial court's explanation of mitigating circumstances; the court's failure to instruct the jury that it could recommend a sentence of life imprisonment without the possibility of parole even if it found one or more aggravating circumstances to exist; and the court's instruction that permitted the jury to count the underlying robbery as an element of the crime and an aggravating circumstance.
The circuit court noted that the court's jury charge on mitigating circumstances and on the option of a life-imprisonment-without-parole sentence substantially followed the pattern jury instructions adopted by the Alabama Supreme Court, and determined that counsel's failure to object to these instructions did not constitute deficient performance. (C. 62-63.) We agree. The Alabama Supreme Court has stated that the preferred practice in capital trials is to follow the pattern jury instructions. Ex parte Hagood, 777 So.2d 214, 219 (Ala. 1999). Alabama courts have often held that a trial court's use of Alabama's pattern jury instructions weighs heavily against a finding of plain error. E.g., Price v. State, 725 So.2d 1003,1058 (Ala.Crim.App. 1997), aff'd, 725 So.2d 1063 (Ala. 1998),cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012
(1999).
The record reveals that the trial court's instructions substantially followed the pattern instructions and accurately stated the law. Counsel were not deficient for failing to object to the instructions. Johnson v. State, 612 So.2d 1288, 1297
(Ala.Crim.App. 1992), cert. denied, 612 So.2d 1288 (Ala. 1993). *Page 490 
The circuit court correctly noted that Alabama appellate courts have repeatedly rejected claims regarding the alleged impropriety in "double counting" robbery as an element of the crime and as an aggravating circumstance. (C. 64.) See Stallworth v. State,868 So.2d 1128, 1170 (Ala.Crim.App. 2001). Trial counsel were not deficient for failing to make an objection that had no legal basis.
The trial court correctly determined that counsel's performance was not deficient for failing to make the foregoing objections. Because Hamm failed to prove the deficiency component of the ineffective-assistance-of-counsel test, he is not entitled to relief on the claim.
e. Hamm argues that trial counsel were ineffective because they failed to "object properly" to the presentence report. He specifically objects to the inclusion in the report of information about his involvement in other crimes, and asserts that the allegations were used as nonstatutory aggravating circumstances. He further argues that trial counsel should have objected to the court's consideration of personal letters Hamm had mailed from jail. (Hamm's brief at page 82-83.) The presentence report was not included in the direct appeal record, and it was not introduced at the Rule 32 hearing. Therefore, Hamm has not satisfied his burden of proving the allegations regarding improper information in the report or considered at sentencing.
The circuit court found that trial counsel objected to the information about a Mississippi charge for which Hamm had not been convicted, and the court struck the information from the presentence report. (TR. 1311-12.) Counsel's performance was not deficient as to that charge, because an objection was made and the information was struck. Furthermore, the trial court's sentencing order refers only to statutory aggravating circumstances. There is no indication that the circuit court reviewed any letters or any improper information about prior charges, and it is clear from the sentencing order that the court did not rely on any information if it was reviewed. (T. 1368-75.) Therefore, we conclude that, even if improper information about prior charges was improperly included in the report, and even if counsel's performance was deficient because they failed to object (and we do not make such a finding here), Hamm has not established that he was prejudiced in any way. Because he has failed to establish that counsel were ineffective, Hamm is not entitled to any relief on this claim.
f. At page 84 of his brief to this Court, Hamm concludes the portion of his argument regarding the allegations that he received ineffective assistance of counsel at the penalty phase of his trial:
 "[Defense counsel] failed to properly object to impermissible security measures at the penalty phase, failed to excuse jurors from the panel, failed to object to the cruel and unusual nature of death by electric chair, [citation to petition], failed to object properly to the court's not finding the mental health mitigating circumstance, failed to adequately articulate to the jury and sentencing court reasons why Mr. Hamm's life should be spared. Mr. Hamm has set out in detail the deficiencies of counsel's performance at the penalty phase in his petition for habeas corpus relief and other pleadings. [citation to entire Rule 32 petition and to Hamm's response to the State's motion for partial dismissal]. All of those grounds will not be repeated here, but Mr. Hamm relies upon all of them. . . ."
(Hamm's brief at p. 84.)
This type of "scattergun" approach to *Page 491 
appellate argument has been criticized.[13] Moreover, Rule 28(a)(5), Ala. R.App. P., requires parties to include in their appellate briefs an argument section with citations to relevant legal authorities and to portions of the record relied on in the claims for relief. Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.Gay v. State, 562 So.2d 283, 289 (Ala.Crim.App. 1990). Accordingly, we hold that Hamm waived for purposes of appellate review in this Court the claims quoted above.
g. The trial court correctly denied Hamm relief on his claim that he had received ineffective assistance of counsel at the penalty phase of his trial. The trial court's decision on that portion of the petition is due to be affirmed.
 3. Ineffective Assistance of Counsel on Appeal
Also in Part VII.C. of his brief, Hamm argues that he was denied the effective assistance of counsel on appeal because counsel failed to raise any of the substantive issues discussed in the previous sections of this opinion. The circuit court denied Hamm relief on this claim, based on its determination that appellate counsel were not deficient. (C. 112-13.) We agree with the circuit court.
At the postconviction hearing, the attorneys who represented Hamm on direct appeal — the same attorneys who represented Hamm at trial — testified that they focused on what they believed, based on their research and experience, to be the most viable issues to raise on appeal. (R. 24, 56-57.) The process of evaluating a case and selecting those issues on which the appellant is most likely to prevail has been described as the hallmark of effective appellate advocacy. Smith v. Murray,477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).
 "Appellate counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief on appeal. Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993), cert. denied, 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993). One claiming ineffective appellate counsel must show prejudice, i.e., the reasonable probability that, but for counsel's errors, the petitioner would have prevailed on appeal. Miller v. Keeney, 882 F.2d 1428, 1434 and n. 9 (9th Cir. 1989)."
Thomas v. State, 766 So.2d 860, 876 (Ala.Crim.App. 1998),aff'd, 766 So.2d 975 (Ala. 2000).
Moreover, this Court and the Alabama Supreme Court conducted the plain error review mandated by Rule 45A, Ala. R.App. P.,[14] and found no error or defect warranting reversal.Hamm v. State, 564 So.2d 453, 463-64 (Ala.Crim.App. 1989),aff'd, 564 So.2d 469 (Ala. 1990). Even if counsel had raised on appeal all of the issues postconviction counsel now argues should have been raised, Hamm would not have been entitled to appellate relief, because none of *Page 492 
the claims would have supported a finding of reversible error.
The circuit court correctly denied Hamm relief on his claim that he was denied the effective assistance of counsel on appeal.
 4. Financial Limitations Imposed on Counsel by Statute
Hamm argues that the financial limitations imposed on trial and appellate counsel by § 15-12-21(d), Ala. Code 1975, denied him the effective assistance of counsel. The circuit court determined that this claim was procedurally barred because it could have been, but was not, raised at trial and on direct appeal. (C. 35.) The court addressed the substance of the claim in the alternative. (C. 42-44.) Hamm was represented by the same attorneys at trial and on appeal; therefore, we question whether the claim was procedurally barred. As this Court recognized in another case when addressing the same claim:
 "Arguably, there is a sound legal basis for applying the procedural bars found in Rule 32.2(a) to the appellant's claim. Most of the usual factors disinclining an attorney from alleging his or her own ineffectiveness are not present in a claim of this nature, because an attorney claiming that he or she was deprived of funds sufficient to mount an adequate defense is not necessarily admitting to having made poor strategic choices or unprofessional mistakes, but is instead asserting that despite the best intentions to act in the client's behalf, the attorney's performance has been improperly hampered by forces beyond the attorney's control. It might be argued, then, that the appellant's attorneys at trial and on appeal had little disincentive, and ample opportunity, to present a claim that the compensation scheme in § 15-12-21(d) prevented them from rendering legally effective assistance, if they believed this to be the case. Nevertheless, we recognize that there may be some degree of reluctance on the part of an attorney to confess that his or her performance was deficient, whatever the cause. Therefore, in the present case, we think it proper and sufficient to dispose of the appellant's claim `on its merits,' of which none have been shown."
Bui v. State, 717 So.2d 6, 16 n. 9 (Ala.Crim.App. 1997), cert.denied, 717 So.2d 6 (Ala. 1998).
Hamm is not entitled to any relief on this claim, however, because he failed to present any evidence to support it. In his brief to this Court, Hamm argues that, due to the financial limitations of the statute, counsel could not, among other things, conduct the necessary investigation, travel to Tennessee to investigate and challenge his prior convictions, and could not afford to conduct statewide investigation of his co-defendants. The trial court correctly noted that the attorneys who represented Hamm at trial and on appeal testified at the hearing that their representation was not affected by the limitation on compensation. (R. 36, 61.) Although Hamm questioned the attorneys, he elicited no testimony from them regarding the allegations he now makes about their inability to afford to prepare for the case and represent him effectively. We affirm the trial court's denial of this claim, because it was unsupported by any evidence.[15]
 D. Conclusion
After a thorough review of the trial record, the documents filed on appeal, and of *Page 493 
the record of the Rule 32 proceeding, we have determined that the trial court correctly denied Hamm postconviction relief based on his allegations of ineffective assistance of counsel.
 VIII.
In Part VII of his brief to this Court, Hamm argues that the circuit court erred in dismissing Claims 1-18 and Claim 20 of his petition on procedural grounds without first considering cause and prejudice.[16] Hamm is incorrect. Although in federal court a habeas petitioner can allege that the ineffective assistance of counsel was "cause and prejudice" to excuse a procedural default, e.g. Murray v. Carrier, 477 U.S. 478, 488,106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), Alabama state courts in postconviction proceedings do not recognize the cause and prejudice exception. We recently stated, "Alabama has never recognized any exceptions to the procedural default grounds contained in Rule 32, Ala. R.Crim. P. We have repeatedly stated that the procedural bars in Rule 32 apply equally to all cases, including those in which the death penalty has been imposed."Hooks v. State, 822 So.2d 476, 481 (Ala.Crim.App. 2000). In Issues VIII.A-XXV of his brief, Hamm argues the merits of the specific claims that the trial court found to be procedurally barred from review. We need not address the substance of these issues because the trial court correctly applied the procedural bars of Rule 32.2, Ala. R.Crim. P., and found the claims to be precluded.
 CONCLUSION
Based on our review of the extensive record before us, as well as our review of the arguments of the parties and the relevant legal principles, we are convinced that the trial court correctly denied Hamm's Rule 32 petition, and that Hamm is not entitled to relief on any of the claims raised in this appeal. The judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., and SHAW and WISE, JJ., concur. BASCHAB, J., concurs in the result.
[1] Although the reasons for the delay are somewhat unusual in this case, we note that this case exemplifies the difficulties experienced in postconviction proceedings in capital cases. Due to inadequate funding in capital cases, petitioners depend on local and out-of-state attorneys who volunteer their time to pursue postconviction relief. Scheduling problems and excessive delays are often the result, and these difficulties place undue burdens on all participants in the judicial process.
[2] "C. ____" refers to the pages of the clerk's record in the Rule 32 record on appeal.
[3] "S.R. ____" refers to pages of the one-volume supplemental record filed with this Court on October 2, 2000.
[4] Pro hac vice is defined in Black's Law Dictionary 1227 (7th ed. 1999) as, "For this occasion or particular purpose. The phrase [usually] refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case."
[5] To the extent Hamm argues that the performance of his postconviction counsel was ineffective, we observe that this claim is not properly before us because it was not raised in the circuit court. Even had the claim been preserved, Hamm would not be entitled to relief. Because a petitioner in a postconviction proceeding has no right to counsel, he has no claim regarding the effectiveness of counsel at that proceeding. Mayes v. State,563 So.2d 38, 38-39 (Ala.Crim.App. 1990) (guarantee to assistance of counsel does not extend to postconviction proceedings and, therefore, petitioner could not be deprived of effective assistance of counsel by anything retained or appointed counsel might have done).
[6] In their briefs to this Court on this issue, the parties refer at various times to a March 5, 1995, hearing and a March 6, 1995, hearing. Our review of the record indicates that the hearing was held on March 6, 1995. (C. 5.)
[7] On April 3, 2000, a six-volume "supplement" was filed. Pages from that supplement will hereinafter be designated "Supp. ____."
[8] Examination on this point might have been particularly important because Dr. Watson completed the evaluation more than three years before he submitted the written report.
[9] "T. ____" refers to pages of the transcript of Hamm's 1987 trial.
[10] In his brief to this Court, Hamm often refers only to defense counsel Hugh Harris. Martha Williams served as cocounsel at trial and on appeal. (R. 53-54.) Harris and Williams testified at the postconviction hearing. (R. 7-62.)
[11] Applying the federal counterpart to Alabama's Rule 28, Ala. R.App. P., the United States Court of Appeals for the Eighth Circuit stated, "[W]e regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities. See United States v. Wadlington, 233 F.3d 1067, 1081 (8th Cir. 2000); United States v. Gonzales, 90 F.3d 1363, 1369 (8th Cir. 1996); see also United States v. Dunkel,927 F.2d 955, 956 (7th Cir. 1991) (`Judges are not like pigs, hunting for truffles buried in briefs.')." U.S. v. Stuckey,255 F.3d 528, 531 (8th Cir. 2001).
[12] At page 81 of his brief to this Court, Hamm states, "In these and numerous other passages, see R-1286, R-1283; R-1282, the prosecutor engaged in improper argument." Hamm has not identified to this Court what statements on those pages he deems objectionable, and he has failed to present any argument regarding the statements made on the cited pages. Therefore, we deem any claims related to the portions of the prosecutor's argument on the pages merely listed in brief to be abandoned for purposes of appellate review. Rule 28(a)(5), Ala. R.App. P.
[13] "`Multiplicity hints at lack of confidence in any one. . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.' Jackson, Advocacy Before the Supreme Court, 25 Temple L.Q. 115, 119 (1951)." Jones v. Barnes, 463 U.S. 745,752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).
[14] Rule 39, Ala. R.App. P., was amended effective May 19, 2000, as to death penalty cases. The amendment provided that a plain error review of death penalty cases will be at the discretion of the Supreme Court, rather than a matter of right for the defendant.
[15] Furthermore, this Court has previously held that Alabama's statutory scheme for compensating attorneys in capital cases does not, in and of itself, deny a defendant his right to effective representation. Bui v. State, 717 So.2d 6, 15-16 (Ala.Crim.App. 1997), cert. denied, 717 So.2d 6 (Ala. 1998).
[16] In note 4 of his brief, Hamm acknowledges that Claim XIX was procedurally barred because it was raised and addressed at trial and on appeal.