WISE, Judge.
The appellant, Robert Shawn Ingram, currently an inmate on death row at Holman Correctional Facility, appeals the summary denial of his Rule 32, Ala. R.Crim.P., petition for postconviction relief.[1]
In June 1995, Ingram was convicted of murdering Gregory Huguley during the course of a kidnapping, an offense defined as capital by § 13A-5-40(a)(1), Ala.Code 1975. The jury, by a vote of 11 to 1, recommended that Ingram be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Ingram to death. Ingram’s capital-murder conviction and death sentence were affirmed on direct appeal. Ingram v. State, 779 So.2d 1225 (Ala.Crim.App.1999), aff'd, 779 So.2d 1283 (Ala.2000), cert. denied, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001). The direct appeal became final when we issued the certificate of judgment on September 26, 2000. See Rule 41, Ala. R.App.P.
On February 1, 2002, Ingram filed a Rule 32 petition and a request to proceed in forma pauperis. In March 2002, the *1099 State filed its response to the petition and moved for summary dismissal. Ingram filed a response to that motion. Two years later the State filed a proposed order for the circuit court to adopt when denying the Rule 32 petition. On June 8, 2004, the circuit court adopted the State’s order denying the Rule 32 petition.[2] This appeal followed.
At Ingram’s trial, the State’s evidence tended to show that on July 31, 1993, Ingram and his codefendants — Anthony Boyd, Moneek Marcell Ackles, and Dwi-naune Quintay Cox[3] — kidnapped Gregory Huguley, took him to a ballpark in Tallade-ga County, taped him to a bench, doused him with gasoline, set him on fire, and watched as he burned to death. Testimony showed that Huguley was abducted and murdered because he failed to pay the defendants $200 for cocaine he had purchased several days before he was murdered.

Standard of Review

Ingram appeals the denial of his collateral petition challenging his capital-murder conviction and sentence of death. According to Rule 32.3, Ala.R.Crim.P., Ingram has the sole burden of pleading and proving his claims by a preponderance of the evidence.
“The standard of review this Court uses in evaluating the rulings made by the trial court is whether the trial court abused its discretion. See Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992). However, ‘[w]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.’ Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). ‘If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition.’ Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App.1999). The plain-error standard of review does not apply when this Court evaluates the denial of a collateral petition attacking a death sentence. See Ex parte Dobyne, 805 So.2d 763 (Ala.2001), and Rule 45A, Ala. R.App.P. The procedural bars in Rule 32, Ala.R.Crim.P., apply to all cases, even those involving the death penalty. Hooks v. State, 822 So.2d 476 (Ala.Crim.App.2000).”
Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005).
I.
Ingram argues that the circuit court erred in adopting verbatim the State’s proposed order denying the Rule 32 petition. Specifically, he argues that such a practice is “universally condemned.” He further argues: “Permitting an adversarial party to perform the judicial function also conflicts with the need for both the reality and appearance that the process for imposing death be scrupulously fair, objective, and reliable.” (Ingram’s brief at pp. 12-13.)
*1100 In Dobyne v. State, 805 So.2d 733, 741 (Ala.Crim.App.2000), we addressed this same issue and stated:
“ ‘ “While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App.1989), cert. denied, [498] U.S. [882], 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Cr.App.[1989]), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).”
“ ‘Bell v. State, 593 So.2d 123, 126 (Ala.Cr.App.1991), cert. denied, 593 So.2d 123 (Ala.), cert. denied, 504 U.S. 991, 112 S.Ct. 2981, 119 L.Ed.2d 599 (1992).’”
Quoting Jones v. State, 753 So.2d 1174, 1180 (Ala.Cr.App.1999).
As we more recently stated in Hyde v. State, 950 So.2d 344, 371 (Ala.Crim.App.2006):
“Hyde contends that the circuit court erred in adopting the State’s proposed order. Specifically, he argues that there are numerous factual and legal errors in the order that indicate that the order does not represent the court’s own independent judgment, but shows a wholesale adoption of the State’s proposed order without consideration of his claims. However, this Court has repeatedly upheld the practice of adopting the State’s proposed order when denying a Rule 32 petition for postconviction relief. See, e.g., Coral v. State, 900 So.2d 1274, 1288 (Ala.Crim.App.2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005), and the cases cited therein. ‘Alabama courts have consistently held that even when a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.’ McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003).”
Thus, even when a circuit court adopts a proposed order by the State in toto, the petitioner must show that the findings of fact and conclusions of law are “clearly erroneous” before an appellate court will reverse the order on the sole basis that the order was drafted by the State. For the following reasons, we find that the facts and conclusions of law in the circuit court’s order were not clearly erroneous.
II.
Ingram next argues that he was deprived of his constitutional right to due process when the circuit court denied the Rule 32 petition without first appointing counsel, without ruling on outstanding motions, and without providing him notice and an opportunity to be heard.
The record shows the following chronology of events:
February 1, 2002 — Rule 32 petition and in forma pauperis declaration filed in the Talladega Circuit Court.
February 27, 2002 — In forma pauperis status granted by the circuit court.
March 18, 2002 — State filed its response to the Rule 32 petition.
March 18, 2002 — State filed a motion for partial dismissal pursuant to Rule 32.6(b), Ala.R.Crim.P.
April 23, 2002 — Ingram filed a motion for permission to proceed ex parte on a request for funds for expert assistance. April 23, 2002 — Ingram filed his first amended petition. In this amended petition, Ingram requested full discovery, *1101 citing the Supreme Court’s decision in Ex parte Monk, 557 So.2d 832 (Ala.1989), and funds for experts.
April 23, 2002 — Ingram filed a motion in opposition to State’s motion for a partial dismissal of the Rule 32 petition.
July 26, 2002 — State filed response to Ingram’s opposition to State’s motion for a partial dismissal.
July 26, 2002 — State filed a response to Ingram’s motion to proceed ex parte on request for funds for expert assistance. July 26, 2002 — State filed a motion for a partial dismissal pursuant to Rule 32.2(a), Ala.R.Crim.P.
July 26, 2002 — State filed a motion for a partial dismissal pursuant to Rule 32.6(a), Ala.R.Crim.P.
July 26, 2002 — State filed its answer to Ingram’s amended Rule 32 petition.
May 20, 2004 — State filed a proposed order denying the Rule 32 petition.
June 8, 2004 — Circuit court issued an order denying Rule 32 petition.
July 16, 2004 — Ingram filed an untimely motion to reconsider.
July 16, 2004 — Ingram filed a timely notice of appeal.
July 21, 2004 — Circuit court purported to grant Ingram’s untimely motion to reconsider and set aside its June 8, 2004, order denying the Rule 32 petition.
July 30, 2004 — Court of Criminal Appeals issued an order requesting that the circuit court cite this Court to any authority for setting aside its June 8, 2004, order more than 30 days after it had been entered.
September 8, 2004 — Court of Criminal Appeals issued order setting aside the circuit court’s July 21, 2004, order as void for lack of jurisdiction.
When discussing a petitioner’s burden of pleading sufficient grounds to warrant further proceedings in the circuit court, this Court has stated:
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion “which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim. P., to present evidence proving those alleged facts.”
Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App.2003). More recently in Hyde v. State, 950 So.2d at 356, we stated:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been differ *1102 ent.’ 466 U.S. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
A.
Ingram first asserts that his Rule 32 petition was improperly denied before counsel was appointed to represent him. Specifically, for the first time in his brief to this Court he argues that two of his attorneys — attorneys licensed to practice law in the State of New York — filed applications to appear pro hac vice in his case but were informed that the requests could not be processed until a hearing date on any pending matter had been scheduled.
The record shows that the Rule 82 petition filed in the circuit court in February 2002 was signed by Attorney Richard Jaffe, an attorney licensed to practice law in the State of Alabama. The only reference in the record to the attempted filing of any pro hac vice applications is a letter from John Blume, Associate Professor of Law at Cornell Law School, to the circuit court, which is contained in the supplemental record. The letter states that Blume and his colleague, Sheri Lynn Johnson, filed applications for pro hac vice status but were informed that the applications would not be considered until a hearing on any matter associated with the Rule 32 petition had been scheduled. There is no indication in the record that any pro hac vice applications had been filed or that Ingram objected to the court’s method of handling any such applications.[4] Nor did counsel request a hearing on any pending matter. “ ‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ ” Dickey v. State, 901 So.2d 750, 756 (Ala.Crim.App.2004), quoting Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992).[5]
Also, because no pro hac vice applications are contained in the record, this Court has no means of determining whether those applications complied with the provisions of Rule VII, Rules Governing Admission to the Alabama State Bar. Rule VII.E., states, in part: “The granting or denial of an application for admission as counsel pursuant to this rule is discretionary with the court....” Accordingly, we have no way of determining whether the circuit court exceeded that broad discretion in this case.
Last, this is a collateral proceeding in which Ingram attacks his conviction and sentence. As the United States Supreme Court stated in Pennsylvania v. Finley, 481 U.S. 551, 555-57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987):
“We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, see Johnson v. Avery, 393 U.S. 483, 488 (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. Wainwright v. Torna, 455 U.S. 586 (1982); Ross v. Moffitt, 417 U.S. 600 (1974)....
[[Image here]]
“... Postconviction relief is even further removed from the criminal trial *1103 than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See Fay v. Noia, 372 U.S. 391, 423-24 (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. United States v. MacCollom, 426 U.S. 317, 323 (1976) (plurality opinion), and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.”
As this Court also noted in Mayes v. State, 563 So.2d 38, 39 (Ala.Crim.App.1990):
“It is clear under Alabama law that there is no requirement that indigent petitioners be furnished counsel regarding post-conviction proceedings. Ex parte Cox, 451 So.2d 235, 237 (Ala.1983). Because a state prisoner ‘ha[s] no constitutional right to coram nobis [now Rule 32] counsel, see Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), he cannot excuse a procedural default based upon ineffective assistance rendered by that counsel. See [Wainwright v.] Torna, 455 U.S. [586,] 587-88, 102 S.Ct. [1300,] 1301-02, [71 L.Ed.2d 475 (1982)].’ Toles v. Jones, 888 F.2d 95, 99-100 (11th Cir.1989).”
In this case, the record affirmatively shows that at all times during the postcon-viction proceedings Ingram was represented by counsel. For the reasons stated above, we find no reversible error. The fact that Ingram was not represented by additional attorneys or attorneys of his choosing does not entitle him to relief. See Hamm v. State, 913 So.2d 460 (Ala.Crim.App.2002).
B.
Ingram also argues that the circuit court failed to rule on various motions that were pending at the time the circuit court denied the Rule 32 petition. Specifically, he asserts that the circuit court failed to dispose of his motion to proceed ex parte on his request for funds for expert assistance.
Initially, we note that the record shows that Ingram never attempted to obtain a ruling on this motion; he never brought this matter to the court’s attention.
“In Ex parte Swoope, 724 So.2d 92, 95-96 (Ala.Crim.App.1998), we recognized the long-standing Alabama rule that a party has a duty to monitor the status of his or her case. We stated:
“ ‘It is the policy of the judicial system of this state that an accused has a duty to monitor the status of his case. Ex parte Weeks, 611 So.2d 259 (Ala.1992). This policy was discussed in Hart v. City of Priceville, 631 So.2d 301 (Ala.Cr.App.1993):
“ ‘ “ ‘[I]t is generally held in Alabama that a party is under a duty to follow the status of his case, whether he is represented by counsel or acting pro se, and that, as a general rule, no duty rests upon either the court or the opposing party to advise that party of his scheduled trial date, see the cases collected at 18A, Ala. Digest Trial § 9(1) (1956).’ Ex parte Weeks, 611 So.2d 259, 262 (Ala.1992). ‘Generally, a party, whether represented by counsel or acting pro se, has a duty to keep abreast of the status of his case, and no duty rests on the court or opposing parties to advise him of the trial date.’ Bowman v. Slade, 501 So.2d 1236 (Ala.Civ.App.1987).” ’
*1104 “See also Johns v. A.T. Stephens Enters., Inc., 815 So.2d 511, 515 (Ala.2001) (‘“[A]ll parties litigant, once in court, either for themselves or through their attorneys[,] must keep track of their case, [and] know [its] status...."); Averett v. Averett, 255 Ala. 606, 610, 52 So.2d 371, 375 (1951)(‘ “A litigant by his attorney must keep up with the progress of his case in court, and he is not to have notice, except as prescribed by law.” ’); Faust v. Faust, 251 Ala. 60, 36 So.2d 229 (1948); Wetzel v. Birmingham Elec. Co., 250 Ala. 267, 268, 33 So.2d 882, 882 (1948) (‘As the aggressive party in the case it was plaintiffs duty to follow his case in all of its steps until finally disposed of and no duty rested upon the court or its officers or the adverse party to advise plaintiff of the setting of the case for trial.’); Thompson v. Odom, 279 Ala. 211, 184 So.2d 120 (1966); State v. Woodham, 276 Ala. 662, 166 So.2d 391 (1964). Alabama is not alone in recognizing this policy. See Vilsick v. Fibreboard Corp., 861 S.W.2d 659, 664 (Mo.Ct.App.1993) (‘A party has a continuing duty to monitor a case from the filing of the case until final judgment.’); Blichert v. Brososky, 436 N.E.2d 1165, 1168 (Ind.Ct.App.1982) (‘When an attorney appears in court for a client, it becomes his duty to keep advised of the progress of the case.’); Oklahoma Bar Ass’n v. Braswell, 663 P.2d 1228 (Okla.1983) (attorney has duty to monitor status of case). Cf. Kawazoe v. Davila, 849 S.W.2d 906 (Tex.App.1993) (will not impose on layman duty to monitor the status of his case).”
Ex parte Maples, 885 So.2d 845, 848-49 (Ala.Crim.App.2004). The duty to monitor the status of a case necessarily includes the duty to ensure that the circuit court acts on motions that are filed with the court.
Also, Ingram had no right to proceed ex parte in his request for expert assistance.
“Contrary to McGahee’s assertions, the trial court was not obliged to allow him to proceed ex parte in his request for funds to pursue his postconviction claims. McGahee’s reliance on Ake v. Oklahoma[, 470 U.S. 68 (1985),] is misplaced because postconviction proceedings pursuant to Rule 32, Ala.R.Crim.P., are not criminal in nature. McGahee, himself, pursued this discretionary legal action against the State of Alabama, and the action is civil in nature. See Hamm v. State, 913 So.2d 460, 471 (Ala.Crim.App.2002), and cases cited therein. This Court held that the fundamental fairness mandated by the Due Process Clause does not require the trial court to approve funds for experts at a postconviction proceeding. Hubbard v. State, 584 So.2d 895, 900 (Ala.Crim.App.1991). Moreover, this Court has specifically held that Ake is not applicable in post-conviction proceedings. Ford v. State, 630 So.2d 111, 112 (Ala.Crim.App.1991), aff'd, 630 So.2d 113 (Ala.1993). See also Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000), aff'd, 662 So.2d 929 (Ala.1992)(table).”
McGahee v. State, 885 So.2d 191, 229 (Ala.Crim.App.2003).
On a related matter, Ingram asserted in his amended petition that he was entitled to “full” discovery as mandated by the Alabama Supreme Court’s decision in Ex parte Monk, 557 So.2d 832 (Ala.1989). However, Ingram ignored the fact that Ex parte Monk does not apply to discovery related to collateral proceedings attacking a death sentence. Ingram also ignored the Alabama Supreme Court’s decision in Ex parte Land, 775 So.2d 847 (Ala.2000)—a case released before Ingram’s postcon-viction proceedings were commenced.
*1105 In Ex parte Land, the Alabama Supreme Court held:
“We agree with the Court of Criminal Appeals that ‘good cause’ is the appropriate standard by which to judge post-conviction discovery motions. In fact, other courts have adopted a similar ‘good-cause’ or ‘good-reason’ standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1 (1997)]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey’s Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that ‘an evidentiary hearing must be held on a [petition for postcon-viction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.’ Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985).
“We emphasize that this holding— that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida’s rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (‘a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala.R.Crim.P., which states:
“ ‘The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’ ”
775 So.2d at 852-53.
C.
Ingram next argues that he was not given notice or an opportunity to be heard before the circuit court issued the order denying the petition. The State’s proposed order was filed on May 20, 2004. The circuit court signed the order denying the petition on June 8, 2004 — 19 days later.
*1106 The Alabama Supreme Court has held that: “ ‘Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition without requiring a response from the district attorney.’ ” Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992) (quoting Bishop v. State, 592 So.2d 664, 667 (Ala.Crim.App.1991) (Bowen, J., dissenting)).
For the reasons discussed in this opinion, Ingram’s claims were either procedurally barred or precluded. Therefore, if any error occurred, it was harmless. See Young v. State, 600 So.2d 1073 (Ala.Crim.App.1992) (failure to allow State opportunity to file response to Rule 32 petition was harmless given fact that issues presented by defendant were procedurally barred or precluded).
The record does show that Ingram filed an untimely motion for the court to reconsider its order denying the petition 42 days after the order was issued. However, in the context of postconviction proceedings, we have held that a circuit court retains jurisdiction to modify its judgment for only 30 days after the judgment is entered. See Loggins v. State, 910 So.2d 146 (Ala.Crim.App.2005).
Ingram was placed on notice in March 2002 of the State’s asserted grounds of preclusion. Ingram had two years to amend his petition, move for discovery under Ex parte Land, or file an objection to the circuit court’s method of handling various motions. However, Ingram did nothing. We can only conclude after reviewing the record that Ingram failed to pursue his postconviction petition. For these reasons, we find no error.
III.
Ingram next raises several claims related to the performance of his attorneys at his capital-murder trial. To show that counsel’s performance was deficient a petitioner must satisfy the test articulated by the United State Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show: (1) that counsel’s performance was deficient'; and (2) that he was prejudiced by the deficient performance.
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91], at 101 [(1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
466 U.S. at 689, 104 S.Ct. 2052. As the United States Supreme Court further stated:
*1107 “[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.”
466 U.S. at 690-91, 104 S.Ct. 2052.
At trial, Ingram was represented by attorneys Jeb Fannin and Mark Nelson. Our records show that these two attorneys also represented Ingram on direct appeal. Ingram makes the following allegations concerning his counsel’s performance at his capital-murder trial.
A.
Ingram first argues that his trial counsel’s performance during the plea negotiations was ineffective because, he argues, counsel failed to provide Ingram with adequate advice concerning the consequences of his violating his plea agreement with the State. Ingram argues in his brief: “[Tjrial counsel failed to take reasonable efforts to persuade Mr. Ingram that the die was cast and that it was essential to live up to the bargain. There is no possible strategic justification for this error.” (Ingram’s brief at page 28.)
The circuit court made the following findings of fact on this claim:
“This claim is summarily dismissed pursuant to Rule 32.6(b), Ala.R.Crim.P., because it is not sufficiently pleaded. His pleading does not include any fact which, if presented by trial counsel, would have resulted in a plea bargain for Ingram. Pursuant to Rule 32.7(d), Ala. R.Crim.P., this claim is summarily dismissed.
“In addition, this claim is summarily dismissed because no material issue of fact or law exists which would entitle Ingram to relief. The record reveals that, on September 15, 1993, Ingram entered into an agreement with the Tal-ladega County District Attorney’s Office. One of the terms of this agreement was that Ingram would testify against any other person charged with this crime. Ingram breached this part of the agreement during codefendant Anthony Boyd’s trial, by refusing to testify. A colloquy was held with Ingram concerning this agreement with the district attorney’s office. During this colloquy, Ingram indicated that he understood that he was breaching this agreement and understood the consequences of breaching the agreement. It is clear from the record before this Court that Ingram made an informed decision to breach his plea agreement with the district attorney’s office. There is nothing in the record that indicated that Ingram’s trial counsel had anything to do with this decision. This claim of ineffective assistance of counsel is clearly without merit and fails to present a material issue of fact or law that would entitle Ingram to relief.”
(C.R. 214-15.)
We have reviewed the record of the direct appeal in this case.[6] The record *1108 shows that before Ingram’s trial he negotiated a plea agreement with the State; in exchange for his truthful testimony he would plead guilty to murder. At Anthony Boyd’s trial Ingram refused to testify. The circuit court then informed Ingram about the consequences of his failure to honor the plea agreement and that if he failed to honor the agreement he would be tried for capital murder and could face a sentence of death. It is clear from this colloquy with Ingram, which is a part of the record of the direct appeal, that Ingram’s trial attorneys also counseled Ingram concerning the consequences of his failure to honor the plea agreement with the State.
In his brief to this Court, Ingram for the first time attempts to do what he should have done in his petition — to expand on the claim by making factual assertions to support it. These factual assertions were not included in Ingram’s petition or in his amended petition. Therefore, we cannot consider these assertions because they were not first presented to the circuit court. “This court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court.” Myrick v. State, 787 So.2d 713, 718 (Ala.Crim.App.2000).
For the foregoing reasons, relief was correctly denied on this claim.
B.
Ingram further argues that he was denied the effective assistance of counsel during voir dire examination. Specifically, he asserts that counsel failed to obtain adequate information from prospective jurors related to their possible biases. For the first time in his brief, Ingram argues that trial counsel failed to adequately question jurors about their views toward the death penalty, failed to question jurors about whether they could consider mitigating evidence, and failed to discover any actual biases. However, these assertions were not presented to the trial court; therefore, they cannot be considered by this Court. See Myriclc.
Ingram asserted the following in his amended petition in regard to this claim:
“Trial counsel failed to conduct meaningful, constitutionally permissible voir dire of the prospective jurors at petitioner’s trial, failed to pose questions necessary to disclose bias and predisposition on the part of prospective jurors, and failed to articulate meritorious challenges for cause based on information revealed by prospective jurors during voir dire. As a result of counsel’s deficient performance, there is a reasonable probability that one or more of the jurors seated on [Ingram’s] capital trial harbored actual bias which, had it been disclosed, would have warranted their removal for cause. In addition, trial counsel failed to develop the full factual basis for a challenge under Batson v. Kentucky, 476 U.S. 79 (1986).”
(C.R. 87.)
The circuit court found that this claim was insufficiently pleaded because Ingram failed to identify the alleged deficiencies. “Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b).” Hyde, 950 So.2d at 356. We agree with the circuit court that this claim was not sufficiently pleaded; therefore, Ingram was due no relief. See Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005).
C.
Ingram further asserts that counsel was ineffective for failing to investigate and prepare an adequate defense to the capital-murder charge.
*1109 Ingrain’s entire claim in his amended petition consisted of the following:
“Trial counsel failed to independently investigate or otherwise prepare an adequate defense to the state’s capital murder charge against [Ingram]. The state’s proof of [Ingram’s] role in the victim’s murder consisted of the eyewitness testimony of Quintay Cox, an admitted participant in the victim’s murder, who testified pursuant to a plea bargain with the state, and the state’s proof that [Ingram] was involved in the abduction of the victim relied upon the testimony of unreliable drug users. Nevertheless, defense counsel failed [to] present evidence of, or argue alternative theories as to the scope of [Ingram’s] involvement in the alleged crimes. But for counsel’s deficient performance, there exists a reasonable probability that the result of [Ingram’s] trial would have been different.”
(C.R. 87.)
The circuit court found that this claim was insufficiently pleaded under Rule 32.6(b), Ala.R.Crim.P. We agree with the circuit court that Ingram failed to comply with the pleading requirements of Rule 32.6(b), Ala.R.Crim.P.
Moreover, we have examined the record of the trial proceedings, and we cannot agree that Cox’s testimony was the only testimony connecting Ingram to the murder. Indeed, as this Court noted on direct appeal, we find that the evidence of Ingram’s involvement in Huguley’s horrific murder was overwhelming. Several witnesses testified that Ingram spoke to them about his part in the murder.
Ingram’s defense was that the lack of evidence created a reasonable doubt to convict him. Counsel concentrated on the fact that numerous fingerprints were discovered at the murder scene yet none matched Ingram’s fingerprints. Counsel also attacked the credibility of the State’s witnesses and pointed out the numerous discrepancies in their testimony. A review of the record shows that counsel did an admirable job, given the overwhelming evidence of Ingram’s guilt.
For these reasons, the circuit court correctly denied Ingram relief on this claim.
D.
Ingram further argues that counsel was ineffective for failing to adequately cross-examine state witnesses. In his amended Rule 32 petition, Ingram identified only one witness and stated:
“Trial counsel was ineffective in challenging the States presentation of its case by failing to adequately cross-examine the state’s witnesses.[7] In particular, counsel failed to adequately question Quintay Cox concerning his extensive drug dealing, his stake in the debt owed by the victim, and the bias that motivated him to minimize the role of Anthony Boyd in the crime with which petitioner was charged. Counsel also failed to confront Cox with the account given by [Ingram] in his statements to the police. But for counsel’s deficient performance, there exists reasonable probability that the result of [Ingram’s] trial would have been different.”
(C.R. 87-88.)
Moreover, we have reviewed Cox’s testimony at Ingram’s trial. Contrary to Ingram’s claim, the record indicates that Ingram’s attorney did cross-examine Cox concerning the circumstances surrounding the murder, the fact that he wore a beeper because he sold drugs “on occasion,” and *1110 inconsistencies in a statement Cox had given to police and his trial testimony. There is, quite simply, no merit to this claim. Therefore, Ingram was due no relief.
E.
Ingram further argues that counsel was ineffective for failing to present, to adequately argue, and to obtain favorable rulings on various motions and objections. In his petition Ingram identified but one instance of deficient conduct to support this claim. In his brief to this Court Ingram attempts to present specific facts related to this issue; however, they were never presented to the circuit court and are not properly before this Court. See Myrick, supra.
Ingram’s entire argument in his amended Rule 32 petition consisted of the following:
“Trial counsel failed to present, adequately argue, and obtain favorable rulings on numerous motions and objections. For example, trial counsel failed to argue that there was inadequate evidence to support the kidnapping element of the first count of the offense, despite the contradictory testimony of the state’s witnesses and the lack of evidence to suggest that petitioner kidnapped the victim. But for counsel’s deficient performance, there exists a reasonable probability that the result of [Ingram’s] trial would have been different.”
(C.R. 88.)
The circuit court made the following findings of fact:
“This claim should be dismissed because it is insufficiently pleaded under Rule 32.6(b). With one exception, Ingram does not identify how counsel failed to present, adequately argue, and obtain favorable rulings on numerous motions and objections. This claim is therefore dismissed from the first amended Rule 32 petition pursuant to Rule 32.7(d).
“To the extent that Ingram asserts that his attorneys were ineffective because they failed to argue that there was inadequate evidence to support the kidnapping element of the capital murder count of his indictment, this does not present a material issue of fact or law which would entitle Ingram to relief. The record reveals that Ingram and his codefendants abducted Gregory Huguley at gunpoint on 15th Street in Anniston, Alabama.”
(C.R. 218-19.) We agree with the circuit court’s findings; they are supported by the record.
Moreover, in this Court’s opinion on direct appeal, we stated:
“We note at the outset that Ingram does not question the sufficiency of the evidence to support his conviction. Nevertheless, we have reviewed the record as to sufficiency, as we are required to do in a death case, and we find that the evidence presented by the state was sufficient for the jury to find him guilty beyond a reasonable doubt of the capital offense charged in the indictment [murder during the course of a kidnaping]. In the trial court’s order setting out the facts summarizing the crime and addressing Ingram’s participation in it, the court stated, ‘The evidence introduced in the four-day trial, both direct and circumstantial evidence, overwhelmingly supported the jury’s verdict.’ We agree.”
Ingram, 779 So.2d at 1239. Thus, relief was correctly denied on this claim.
F.
Ingram further argues that counsel was ineffective for failing to have a qualified and independent pathologist review the autopsy data generated by the *1111 State’s expert. He argues in his brief: “Had trial counsel employed an independent pathologist, they may have been able to offer evidence that the victim was under the influence of substantial amounts of crack cocaine, thereby lessening the amount of pain he may have felt and possibly contributing to this death or the events leading up to it.” (Ingram’s brief at pp. 39-40.)
Ingram’s entire claim in his amended Rule 32 petition consisted of the following:
“Trial counsel failed to submit autopsy data generated by the state’s medical examiner to a qualified, independent pathologist for review. As a result, trial counsel were unprepared to challenge the medical examiner’s damaging testimony concerning the duration of the suffering the victim endured. Among other things, this evidence was relevant to the heinous, atrocious and cruel aggravating circumstance. But for counsel’s deficient performance, there exists a reasonable probability that the result of [Ingram’s] trial would have been different.”
(C.R. 88.) The circuit court correctly found that this claim lacked the specificity requirements of Rule 32.6(d), Ala.R.Crim.P.
Ingram also argues that he was denied the funds for an expert to prove this claim.
“[T]his court has held that indigent defendants are not entitled to funds to hire experts to assist in postconviction litigation. See Ford v. State, 630 So.2d 111 (Ala.Crim.App.1991), aff'd, 630 So.2d 113 (Ala.1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); Holladay v. State, 629 So.2d 673 (Ala.Crim.App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); Hubbard v. State, 584 So.2d 895, 900-01 (Ala.Crim.App.1991), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992).”
Williams v. State, 783 So.2d 108, 113 (Ala.Crim.App.2000).
Moreover, Cox testified that he and his fellow defendants taped Huguley to a board as Huguley pleaded: “Please don’t kill me.” He said that they then set Hu-guley on fire and watched as he rolled off the board. Cox also said that they watched Huguley burn for about 10 or 15 minutes. Cox’s testimony showed that Huguley was alive when he was set on fire. The coroner also testified that there was soot in Huguley’s trachea, meaning that he had breathed in smoke, and that he had vomited from the shock. When the coroner was asked how long Huguley was alive to suffer, Ingram’s attorney objected and the coroner did not answer this question. (Record of trial, pp. 467-68.)
For these reasons, relief was correctly denied on this claim.
G.
Ingram further argues that counsel was ineffective for failing to object to voir dire comments made by the prosecutor, failing to object to numerous instances of leading questions asked by the prosecutor, and failing to object to improper summation arguments.
Ingram did not identify any specific instance; he merely pleaded the following in his amended Rule 32 petition:
“Trial counsel failed to object to voir dire comments about the practices of defense attorneys, to numerous instances of leading questions by the prosecutor and to improper summation arguments, including unfavorable comment on [Ingram’s] failure to call witnesses that were equally available to each party. But for counsel’s deficient performance, there exists a reasonable probability that the result of [Ingram’s] trial would have been different.”
*1112 (C.R. 88.) The circuit court found that this claim lacked the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. We agree.
Moreover,
“[E]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made. Effectiveness of counsel is not measured by whether counsel objected to every question and moved to strike every answer.”
Brooks v. State, 456 So.2d 1142, 1145 (Ala.Crim.App.1984). In Moore v. State, 659 So.2d 205, 209 (Ala.Crim.App.1994), we further stated:
“Objections are a matter of trial strategy, and an appellant must overcome the presumption that ‘counsel’s conduct falls within the wide range of reasonable professional assistance,’ that is, the presumption that the challenged action ‘might be considered sound trial strategy.’ Strickland [v. Washington], 466 U.S. [668] at 687-88, 104 S.Ct. [2052] at 2064, 80 L.Ed.2d [674] at 693 (1984). Again, the appellant has not shown how she was prejudiced by trial counsel’s failure to make objections.”
The circuit court correctly denied Ingram relief on this claim.
IV.
Ingram further argues that counsel was ineffective at the penalty phase because, he says, counsel failed to properly investigate and present mitigation evidence about Ingram’s family background, medical history, educational history, and other life experiences. He also argues that counsel failed to move for expert assistance concerning Ingram’s mental health.
When denying relief on this claim, the circuit court stated:
“This claim is not sufficiently pleaded pursuant to Rule 32.6(b), Ala.R.Crim.P., because Ingram does not specifically identify what social and family history counsel failed to investigate and present. Ingram does not contend with any particularity what relevant aspects of Ingram’s background, medical history, educational history, and other life experience counsel failed to investigate and present....
“This claim is also without merit. The trial transcript reveals that trial counsel called numerous witnesses to testify concerning Ingram’s life and background. In fact, the Court of Criminal Appeals stated the following in its opinion on direct appeal: ‘At the sentencing phase before the jury, he [Ingram] called eight witnesses, seven of whom were relatives who offered mitigation testimony about Ingram’s family life and background and who asked the court to spare his life.’ Ingram v. State, 779 So.2d 1225, 1238 (Ala.Crim.App.1999). It is clear that Ingram’s attorneys did investigate and present mitigating evidence concerning his background and family history.
[[Image here]]
“In addition, this claim is dismissed because no material issue of fact or law exists concerning this claim. The trial transcript reveals that trial counsel filed a motion for a court-ordered mental examination of Ingram. Ingram was then evaluated by a counselor at the Cheaha Mental Health Center. A written report was submitted by this counselor concerning his evaluation of Ingram. In this report, the counselor stated: ‘Mr. Ingram does not appear to suffer from any form of mental illness, nor does he exhibit suicidal ideations. Overall, he is well oriented, expressed himself well verbally, and appears to be of average to above average intelligence.’ In addition, the counselor found that it does not appear that Ingram needed further psychiatric evaluation. Thus, counsel did *1113 investigate evidence concerning Ingram’s mental health.”
(C.R. 224-27.)
We have reviewed the record of Ingram’s sentencing hearing. Ingram’s attorneys called eight witnesses to testify, including his mother, who was permitted to testify by deposition because she had recently undergone surgery for a brain tumor.[8] Ingram’s mother, Dorothy Ack-les, testified that Ingram was born in Brooklyn, New York; that he had been healthy as a child but had had to undergo surgery because he was bowlegged; that he had two brothers and one sister; that he had been an excellent student and athlete; that he had been a quiet and obedient child; and that he always had a positive influence on others. Ack-les also testified that Ingram had a daughter who was 11 months old at the time of her deposition. She asked the jury to spare her son’s life. The other witnesses testified that Ingram was a positive influence in their lives and that he loved children. They all asked that Ingram’s life be spared.
The trial record also shows that Ingram was evaluated at Cheaha Mental Health Center. It was the mental-health expert’s opinion that Ingram did not suffer from any mental illness. Therefore, counsel had no reason to question Ingram’s mental health.
Clearly, this is not a case where counsel failed to conduct any investigation into possible mitigating evidence. See Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).[9] There is absolutely no indication that this case falls within the scope of the Supreme Court’s holding in Wiggins. It is clear from the record that counsel did investigate and did put on a case in mitigation. Relief was correctly denied on this claim.
A.
Ingram also argues that counsel was ineffective for failing to object to improper summation arguments made by the prosecutor. Ingram does not identify any specific instance in his brief.
In his amended Rule 32 petition, Ingram pleaded the following:
“Trial counsel failed to object to improper summation comments by the prosecutor, including argument that capital punishment is ‘self-defense.’ ”
(C.R. 89.) Clearly, this claim lacked the specificity requirements of Rule 32.6(b), Ala.R.Crim.P.
Moreover, on direct appeal we evaluated the substantive issue and found that the prosecutor’s argument was not improper but, when viewed in the context of the entire argument, was a plea for law enforcement. See Ingram, 779 So.2d at *1114 1269. Ingram was due no relief on this claim.
B.
Ingram argues that counsel was ineffective for failing to present evidence in mitigation concerning his adaptation to prison life. Ingram does not identify what specific facts supported this claim.
In his amended Rule 32 petition, Ingram made the following claim:
“Counsel failed to investigate evidence of [Ingram’s] excellent behavior in jail and other evidence of prison adaptability. But for counsel’s deficient performance, there exists a reasonable likelihood that the result of [Ingram’s] trial would have been different.”
(C.R. 89.) The circuit court correctly found that this claim was insufficiently pleaded under Rule 32.6(a), Ala. R.Crim.P., because Ingram failed to specify what evidence was not presented.
Moreover, a defendant’s conduct while in jail awaiting trial has been described as at most, “minimally mitigating” evidence. See State v. Spears, 184 Ariz. 277, 279, 908 P.2d 1062 (1996).
C.
Ingram also argues that counsel was ineffective for failing to object to Alabama’s requirement that the judge, and not the jury, determine the existence of the aggravating circumstances that support a sentence of death. He relies on the United States Supreme Court’s decisions in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to support his assertion.
The United States Supreme Court in Apprendi held that any fact that increases a sentence above the statutory limit must be presented to a jury and proven beyond a reasonable doubt. This holding was extended to death-penalty cases in Ring.
In its order denying relief, the circuit court stated:
“The Supreme Court of Alabama upheld Alabama’s capital murder statute in Ex parte Waldrop, 859 So.2d 1181 (Ala.2002). In the instant case, the jury found during the guilt phase that Ingram committed capital murder during a kidnapping, a violation of Ala.Code § 13A-5-40 (a)(1). This capital offense corresponds to the aggravating circumstance set forth in Ala.Code § 13A-5-49(4). Apart from the verdict of capital murder, therefore, the jury additionally found the existence of an aggravating circumstance beyond a reasonable doubt, rendering Ingram eligible for the death penalty under Ring. As the Supreme Court of Alabama found in Wal-drop: ‘[T]he findings reflected in the jury’s verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring and Apprendi require.’ Waldrop, [859 So.2d] at 1188. Ingram’s attorneys were not ineffective for failing to raise a meritless issue.”
(C.R. 231-32.) The circuit court’s findings are consistent with Alabama law. Alabama courts have repeatedly upheld death sentences based on the Supreme Court’s rationale in Ex parte Waldrop, 859 So.2d 1181 (Ala.2002). See Ex parte Martin, 931 So.2d 759 (Ala.2004); Gaddy v. State, 952 So.2d 1149 (Ala.Crim.App.2006); Blackmon v. State, 7 So.3d 397 (Ala.Crim.App.2005); Barber v. State, 952 So.2d 393 (Ala.Crim.App.2005); Flowers v. State, 922 So.2d 938 (Ala.Crim.App.2005); Walker v. State, 932 So.2d 140 (Ala.Crim.App.2004); Knight v. State, 907 So.2d 470 (Ala.Crim.App.2004).
Ingram was correctly denied relief because the claim had no legal merit.
*1115 V.
Ingram further argues that he was denied the effective assistance of appellate counsel. Specifically, he argues that counsel failed to raise an Apprendi and Ring claim and that counsel failed to challenge the admission of prejudicial photographs of the victim’s charred remains.
First, we note that Ingram’s direct appeal was final before the United States Supreme Court issued its opinion in Ring that extended its previous holding in Apprendi to death-penalty cases. “[TJrial counsel cannot be held to be ineffective for failing to forecast changes in the law.” Dobyne v. State, 805 So.2d at 748, citing State v. Tarver, 629 So.2d 14, 18-19 (Ala.Crim.App.1993).
Also, Ingram’s death sentence does not violate Ring because during the guilt phase the jury found that Ingram committed the murder during a kidnapping. This fact made Ingram eligible for the death penalty. There was no Ring and Appren-di violation in this case.
Moreover, appellate counsel did argue on direct appeal that photographs of the victim’s body were erroneously admitted because they were gory and cumulative. This Court specifically found no error in the admission of those photographs. See Ingram, 779 So.2d at 1273.
For these reasons, this claim had no legal basis; thus, Ingram was due no relief.
VI.
Ingram argues that the prosecutor violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose exculpatory evidence. Ingram argues the following in his brief to this Court:
“[Ingram] should have been given the opportunity to determine and demonstrate whether the state knowingly or negligently presented perjured testimony, whether it withheld other exculpatory evidence, and whether the withheld evidence was material. Because the circuit court failed to provide [Ingram] with these opportunities, its decision should be reversed.”
(Ingram’s brief at pp. 74-75.)
In the amended Rule 32 petition, Ingram pleaded only the following:
“On information and belief, the prosecution withheld extensive amounts of exculpatory, material evidence. This included, inter alia, evidence as to the drug and other criminal activity of state witnesses, evidence that witnesses were paid for their testimony, prior inconsistent statements and other conflicting evidence concerning petitioner’s own role in the crime.”
(C.R. 92-93.) The circuit court found that this claim failed to meet the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. We agree.
Moreover, as we stated in Williams v. State, 782 So.2d 811, 818 (Ala.Crim.App.2000):
“The appellant’s first argument is that the State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).... The appellant did not assert that this claim was based on newly discovered evidence. Therefore, it is procedurally barred because he could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.; Boyd v. State, 746 So.2d 364 (Ala.Cr.App.1999); Matthews v. State, 654 So.2d 66 (Ala.Cr.App.1994); Lundy v. State, 568 So.2d 399 (Ala.Cr.App.1990).”
Ingram was due no relief on this claim because it was insufficiently pleaded and because Ingram did not allege that this *1116 claim was based on newly discovered evidence.
VII.
Ingram further asserts that juror bias deprived him of a fair and reliable trial and sentencing. He does not identify any specific bias as it related to any specific juror. Ingram merely provides a laundry list of possible biases that may have existed.
In Ingram’s amended Rule 82 petition he failed to assert any specific facts to support this claim. As we have previously stated: “Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b).” Hyde, 950 So.2d at 356.
Moreover, in Ingram’s brief to this Court he states that many biases may have occurred but he was prevented from investigating into those possible biases.
“[T]his court has held that indigent defendants are not entitled to funds to hire experts to assist in postconviction litigation. See Ford v. State, 630 So.2d 111 (Ala.Crim.App.1991), aff'd, 630 So.2d 113 (Ala.1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); Holladay v. State, 629 So.2d 673 (Ala.Crim.App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); Hubbard v. State, 584 So.2d 895, 900-01 (Ala.Crim.App.1991), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992).”
Williams, 783 So.2d at 113.
The Alabama Supreme Court has held that discovery in postconviction proceedings is limited to those instances where a petitioner can establish “good cause.” See Ex parte Land, supra. As stated above, Ingram argues that there may be instances of bias. Clearly, Ingram wanted to go on a “fishing expedition.” This is not the purpose for discovery in collateral proceedings. As the Alabama Supreme Court cautioned in Ex parte Land:
“[W]e caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (‘a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987).”
775 So.2d at 852. Relief was correctly denied because these general assertions failed to meet the specificity requirements of Rule 32.6(b), Ala.R.Crim.P.
VIII.
The following claims in this postconviction proceeding were procedurally barred:
1) Ingram was denied his right to a fair trial by the admission of graphic photographs;
2) The aggravating circumstance that the murder was especially heinous, atrocious, or cruel when compared to other capital offenses is unconstitutional;
3) Ingram’s constitutional rights were violated because the aggravating circumstances were not alleged in the indictment;
4) The state’s decision to seek the death penalty was based on race;
5) Ingram was denied his constitutional rights based on the State’s use of its peremptory challenges;
*1117 6) Prosecutorial misconduct deprived him of a fair trial;
7) Prosecutorial misconduct during summation deprived him of a fair trial;
8) Ingram’s right to ' due process was violated when the circuit court exerted pressure on a codefendant to testify; and
9) Ingram’s constitutional rights were violated by discrimination in the selection of the grand and petit juries and in the selection of the grand jury foreperson.
See Rules 32.2(a)(8) and (a)(5), Ala. R.Crim.P.
Ingram argued in his response to the State’s motion to dismiss that he was entitled to the opportunity to show “cause and prejudice” as to why the procedural bars contained in Rule 32 should not apply to his postconviction proceeding. However, Alabama has never recognized the “cause and prejudice” exception to the application of the Rule 32 procedural bars. As we stated Hamm v. State, 913 So.2d 460, 493 (Ala.Crim.App.2002):
“Although in federal court a habeas petitioner can allege that the ineffective assistance of counsel was ‘cause and prejudice’ to excuse a procedural default, e.g., Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), Alabama state courts in postconviction proceedings do not recognize the cause and prejudice exception. We recently stated, ‘Alabama has never recognized any exceptions to the procedural default grounds contained in Rule 32, Ala. R.Crim.P. We have repeatedly stated that the procedural bars in Rule 32 apply equally to all cases, including those in which the death penalty has been imposed.’ Hooks v. State, 822 So.2d 476, 481 (Ala.Crim.App.2000).”
As we more recently stated in Davis v. State, 9 So.3d 514, 535 (Ala.Crim.App.2006) (opinion on application for rehearing):
“Alabama’s procedural-default bars are mandatory; they apply to every Rule 32 petition, even those involving the death penalty. See Barbour v. State, 903 So.2d 858 (Ala.Crim.App.2004). An Alabama court has no authority to excuse a procedurally defaulted claim. ‘Alabama has never recognized any exceptions to the procedural default grounds contained in Rule 32, Ala.R.Crim.P.’ Ex parte Hooks, 822 So.2d 476, 481 (Ala.Crim.App.2000).”
For the foregoing reasons, the circuit court correctly denied Ingram’s postcon-viction petition.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, J., concur.
SHAW, J., concurs in the result.
COBB, J., dissents, with opinion.

. Judge Jerry Fielding presided over Ingram’s capital-murder trial. However, Judge Fielding retired during the Rule 32 proceedings, and the case was assigned to Judge William E. Hollingsworth.

. Forty-two days after his Rule 32 petition was denied, Ingram filed an untimely motion to reconsider and a timely notice of appeal to this Court. On July 21, 2004, the circuit court granted Ingram’s untimely motion and set aside its earlier ruling. By order dated September 7, 2004, this Court directed the circuit court to set aside its July 21, 2004, order because the motion to reconsider was untimely and because the circuit court retained jurisdiction to modify its June 8, 2004, order for only 30 days after the order was issued. See Ex parte Bishop, 883 So.2d 262 (Ala.Crim.App.2003).

. Boyd was convicted of capital murder and was sentenced to death; Ackles was convicted of capital murder and was sentenced to life imprisonment without the possibility of parole; and Cox, pursuant to a plea agreement, pleaded guilty to murder and was sentenced to life imprisonment.

. A letter to the circuit court from the assistant attorney general representing the State is contained in the supplemental record. The letter states that no pro hac vice application had been filed. This letter accompanied the State’s proposed order denying relief.

. Ingram could have filed a petition for a writ of mandamus challenging the circuit court’s alleged failure to grant the pro hac vice applications. See Ex parte Pace, 775 So.2d 814 (Ala.2000). He did not.

. We have taken judicial notice of the record of Ingram's direct appeal. See Ex parte Salter, 520 So.2d 213 (Ala.Crim.App.1987).

. Relief was correctly denied as to this portion of Ingram’s claim because Ingram clearly failed to meet the specificity requirements of Rule 32.6(b), Ala.R.Crim.P.

. Rule 32.9(a), Ala.R.Crim.P., states, in part: "The court in its discretion may take evidence by affidavits, written interrogatories, or depositions ...."

. In Davis v. State, 9 So.3d 514, 525 (Ala.Crim.App.2006), we stated the following concerning the United States Supreme Court's holding in Wiggins:
"In Wiggins, the Supreme Court held that trial counsel’s performance was ineffective at the penalty phase of a capital-murder trial because counsel had failed to expand its investigation after discovering Department of Social Services (‘DSS’) records. Counsel failed to discover that Wiggins had been severely beaten and tortured by his mother, who was an alcoholic, that he and his siblings had been left alone for days with no food and had been forced to beg for food and to eat paint chips and garbage, that Wiggins had been repeatedly sexually molested and raped while in foster custody and while in the Job Corps training program, and that Wiggins was borderline mentally retarded.”